THE PEOPLE OF THE STATE OF NEW YORK ex rel. FRANK J. SHERMAN, Appellant, v. JOHN PERSON and Others, Composing the Board of Canvassers of the Town of Milton, Respondents.

*Election law — the indorsement of an official ballot for one office by a paster will not authorize its being counted for another.*

At an election at a town meeting, held March 1, 1892, there were four tickets, one for town offices, headed by Frank J. Sherman for supervisor; one for the same offices, headed by Eben S. Lawrence for supervisor, and two excise tickets.

The board of canvassers counted for Lawrence, as supervisor, three ballots, indorsed "Excise," but having pasted upon them his name and the names of the candidates for certain other town offices, which ballots were found in the box marked "Town."

It was also alleged that similar paster ballots were found in the box marked "Excise," and were counted for Lawrence.

These paster ballots, against the protest of the Sherman faction, were burned.

*Held,* that the case must be considered as if the paster ballots were still in existence.

That, under the provisions of the Ballot Reform Law (chap. 262 of the Laws of 1890, as amended by chapter 296 of 1891), the proper legal indorsement of the ballot was an essential feature of an official ballot, and that a ballot not legally indorsed could not be received or counted.

That an official excise ballot was not an official ballot for any other town office, and could not be made such by a paster.

That the use of ballots marked "Excise" to vote for town officers would afford an easy means of identifying the voters, would destroy secrecy and nullify the purposes of the Ballot Reform Law.

Appeal by the relator, Frank J. Sherman, from an order of the Supreme Court, entered in the office of the clerk of the county of Saratoga on the 31st day of March, 1892, denying a motion for a peremptory *mandamus* to compel the respondents to recount the votes cast for supervisor at a town meeting of the town of Milton, Saratoga county.

*Edgar T. Brackett,* for the appellant.

*H. E. McKnight, John Person* and *J. S. L'Amoreaux,* for the respondents.

Herrick, J.:

This is an appeal from an order of the Special Term denying a motion made for a peremptory *mandamus* to compel the defendants

to recount the votes cast for the various candidates for supervisor at a town meeting of the town of Milton, Saratoga county, held March 1, 1892, and directing that the ballots cast for Eben S. Lawrence for supervisor that were indorsed " Excise," or pasters attached to ballots marked " Excise," cast for said Lawrence, be declared invalid, and directing said town board not to count such ballots, and directing said board to declare the result and issue a certificate of election to the candidate having the greatest number of ballots cast for him, without counting said votes indorsed " Excise," or pasters attached to ballots indorsed " Excise."

There is some dispute as to the facts set forth in the moving papers, but there are enough uncontroverted to enable the court to dispose of the matter; the material facts are undisputed.   At the town meeting in question the relator, Frank J. Sherman, and one Eben S. Lawrence were competing candidates for the office of supervisor, and at such election there were four tickets, two for town officers, one headed by the relator Sherman, and the other by Lawrence, and two excise tickets, containing the name of a candidate for excise commissioner on each.   There were two ballot-boxes, one marked " Town " and the other marked " Excise."

In the certificate of election, signed by the board of town canvassers, Eben S. Lawrence is credited with having received 576 votes and Frank J. Sherman with having received 571.   Both parties aver that three ballots indorsed " Excise," having pasted upon them paster ballots containing the names of Eben S. Lawrence and his associate candidates for town offices upon them, were found in the ballot-box marked " Town," and that such paster ballots were counted for said Lawrence for supervisor.

It is also averred by both parties that similar paster ballots were found in the " Excise " box, and that they were also counted for Lawrence.   The relator in his moving papers alleges that there were five such paster ballots found in the " Excise " box; the defendants allege that there were found certain excise ballots with such paster ballots upon them in the " Excise " box, but do not state how many there were so found; and they distinctly state that the 576 votes credited to Lawrence included said paster ballots, and they do not deny that five such ballots were found in the " Excise " box.

The watchers present in the interest of the Sherman ticket

objected to the counting of the paster ballots, pasted on the ballots indorsed "Excise," and asked to have them preserved pursuant to the provisions of the ballot act, such ballots were not preserved, but were burned with the other ballots. Whether done ignorantly or willfully, the case must be treated as if the ballots were still in existence and preserved as the law requires. We have a full and complete description of such ballots, so far as is necessary to enable us to determine what should be done with them. We know, with reasonable certainty, how many there were of them; and we cannot allow the object of the law to be defeated by a wanton or ignorant violation of its provision. Were the paster ballots thus destroyed properly counted for Eben S. Lawrence as a candidate for the office of supervisor?

The board of canvassers and the court below seem to have fallen into error as to what is an official ballot under the law, and to have held that because the ballot indorsed "Excise" was an official ballot that, therefore, a paster ballot for any officer or officers might be affixed to it and counted by virtue of the provisions of section 25 of chapter 262 of the Laws of 1890, commonly known as the "Ballot Reform Law" or "Ballot Law." The portions of that section pertinent to this question read as follows: "The voter may write or paste upon his ballot the name of any person for whom he desires to vote for any office. Any voter may take with him into the voting booth or compartment a printed ballot of his own selection or preparation, to be known as a paster ballot, containing the names of all the offices to be filled, and of the candidates therefor for whom he desires to vote, which paster ballot may be gummed on the back thereof, and the voter may paste the whole of such paster ballot on *any* of the *official ballots* below the stub."

The permission to paste the paster ballot on *any* official ballot, together with a misconception as to what is an official ballot, has evidently caused the difficulty in this matter.

Under the law of 1890 there were as many official ballots as there were tickets nominated, and, in addition, a blank ballot; but the candidates for all offices were to be on a single ticket, the elector could only vote one ballot, and there was only one ballot-box provided for to receive the voted ballots; and when the statute said

the voter could paste his paster ballot on any of the official ballots it simply meant any one of the ballots that should be printed for the legally nominated candidates, and also the blank ballot. So long as all offices to be voted for were to be voted for upon a single ballot, and only a single ballot could be voted, and there was only a single box to receive them, there was not much chance for misapprehension. But, in the year 1891, the law was amended so as to provide for an additional ballot and an additional ballot-box, so that now we have two kinds of official ballots, subdivided into as many more as there may be candidates or tickets legally placed in nomination.

The law as amended must be so construed, if possible, as to preserve its spirit and give effect to its intent. At town elections the relator can now vote two ballots, both must be, however, official ballots. This leads us to consider, what is an official ballot? One of its essential features is a proper and legal indorsement, and a ballot not legally indorsed cannot be received or counted.

Section 17 of the ballot law, among other things, provides as follows: " On the back of each ballot shall be printed in type known as great primer Roman condensed capitals, the indorsement 'official ballot for..........,' and after the word 'for' shall follow the designation of the polling place for which the ballot is prepared, the date of the election, and a *fac simile* of the signature of the county clerk. The ballot shall contain no caption or other indorsement, except as in this section provided. * * * Whenever candidates are to be voted for only by the voters of a particular district, town, village, city or county, the names of such candidates shall not be printed on any other ballots than those provided for use in such district, town, village, city or county respectively." In the year 1891 the ballot law was amended in various respects, among other things by adapting it to the election of town offices. Prior to that time all offices were to be voted for on a single ballot. The law was so amended as to provide for a separate ballot for excise commissioners and for two ballot boxes, whereas under the law of 1890 only one ballot-box had been allowed.

Section 17. " There shall be but one ballot-box at each polling place for receiving all ballots cast for candidates for office."

Section 38, chapter 296 of the Laws of 1891, provides as follows:

" * * * The names of candidates for the office of excise commissioner shall be printed on a different ballot from the one containing the names of candidates for other town offices. Such ballots shall be indorsed 'Excise,' and shall be deposited when voted, in a separate ballot-box, which shall also be marked 'Excise.' They shall be furnished by the clerk as the other ballots are, and shall be substantially in the same form, but not less than six inches long. The ballots containing the names of candidates for other local offices shall be indorsed 'Town.' "

Section 29 of chapter 296 of the Laws of 1891 provides that: "No inspector of election shall deposit in a ballot-box, or permit any other person to deposit in a ballot-box, on election day, any ballot which is not properly indorsed and numbered."

Section 31 of the same law provides that: "No ballot that has not the printed official indorsement shall be counted, except such as are voted in accordance with the provisions of section twenty-one of this act." The exception relates to the provision made for voting when official ballots have not been delivered or have been destroyed. It will thus be seen that the proper legal indorsement of the ballot is regarded as an essential and vital feature of the ballot law; the reasons for so regarding it must occur to everyone, and it is not necessary to recapitulate them now.

It seems to me unnecessary to argue that an official excise ballot is not an official ballot for other town offices, or *vice versa.*

In *People ex rel. Nichols* v. *Board of Canvassers* (129 N. Y., 395) the ballots rejected by the court were, in a sense, official ballots; that is, they were properly indorsed, if used in the proper district; but the official ballot for Election District No. 1 was not the official ballot for Election District No. 2.

So the ballot indorsed "Excise" is an official ballot for the purpose of voting for excise commissioners, but is not an official ballot for the purpose of voting for other town offices; and a ballot with the names of candidates for town offices printed upon it and indorsed "Excise" would not be legally indorsed under the law, and would not be an official town ballot within the meaning of the statute, and could not be legally received or counted by the inspectors, and the legal effect is not changed if the name of the candidates for town officers are printed on another piece of paper and that paper pasted

on the ballot indorsed "Excise." To permit this to be done would open the door to fraud.

The voter is entitled to vote the town ticket and the excise ticket; he could thus vote his choice for town officers by means of the ballot indorsed "Town," and put a paster for the same officers upon the excise ballot, and, in that way, vote twice for the same offices. It was attempted to answer this objection by saying that both the excise and town ballots being numbered alike the fraud would be detected; the learned counsel forgot that the numbers are on the stubs; that the stubs are torn from the ballots before they are deposited in the box, so that when the ballots come to be counted they have no numbers, so that the fraud could not be detected. If any voter voted both ballots, the number in the box might over-run the poll list, but in drawing out to equalize the poll list the beneficiary of the fraud is no more likely to have the ballots cast for him drawn out than is the person injured by the fraud.

The court below in holding that these paster ballots should be counted did so upon the theory that effect must be given to the intentions of the voter. The answer to that is contained in the principal opinion in the *Nichols Case* (129 N. Y., 401) as follows: "The right to vote, secured to the citizen by the Constitution, must be exercised in the manner, and subject to the regulations lawfully prescribed by the legislature in respect to the time when and the method by which his will is expressed, and in order to make his will and intention effectual at the election, he must comply with, at least, all substantial requirements of law." And again, at page 408, the court say: "The legislature has forbidden the elector to cast such a ballot. It has prohibited the inspectors from placing it in the box and the canvassers from counting it. The case could be no stronger had it, in terms, declared such a ballot absolutely void for all purposes. But it is said that this result will disfranchise the electors who cast these ballots in good faith believing that they were the proper official ballots. The answer is that when an elector attempts to express his will at an election by the use, through either design or accident, of ballots which the law declares shall not be counted, the courts have no power to help him. * * * The law contemplates that the elector will not blindly rely upon any one, not even the election officers, in the preparation of his ballot. If he is handed an

official ballot, with a distinguishing mark upon it or *an improper indorsement*, he is not obliged to vote it, but may procure a proper ballot. In this case it cannot be said that the electors were obliged to use these ballots or omit to vote at all. It was their duty to see to it that *so important a part of the ballot as the indorsement was in conformity with the statute.*" * * * " That the use of these ballots was, at best, a wholly unnecessary and thoughtless act on the part of the voters who cast them, is entirely evident. But even if it could be said that those electors had no knowledge or means of knowledge in regard to the improper indorsement, and that they could not, without some inconvenience, provide themselves with ballots such as the law required, we would still be obliged to hold that it would be far better that their votes should be deemed ineffectual than that the fundamental purposes of an important public statute should be subverted, and in the struggle to save these votes by judicial construction the door should be thrown open for evasions of the statute which might revive evils far more dangerous to the public welfare than can possibly, under any circumstances, follow the exclusion of a few hundred votes in a single county, cast by voters, who, at least, as all must admit, neglected to observe important requirements of the law."

Also the language of chief justice in the same case on page 420:

" The purpose of the act seems to require that these provisions should be held to be mandatory, and that a disregard of them, upon any pretense whatever, should constitute a violation of the law and a forfeiture of any benefits sought to be derived from such illegal ballots."

The language I have quoted applies with peculiar force to the facts in this case, and, at the same time, shows how important the court regards the proper indorsement of the ballot and the strictness with which the provisions of the ballot law are to be construed.

There is another reason why the paster ballots, pasted upon the ballots marked " Excise " and found in the town box, should not be counted  In the Nichols case great stress was laid upon the fact that using ballots in one district indorsed for another district afforded a means of identifying the voters, destroyed the secrecy of the ballot, and opened the door for the corruption of the voters, thus nullifying the intention of the law, and that, for those reasons,

the ballots should not be counted. So, the use of ballots marked "Excise" to vote for town officers would afford an easy means of identification, and would nullify the law. If paster ballots can be received and counted, under the circumstances disclosed in this case, then the provisions as to indorsement are of no effect. The word "Excise" is not the legal official indorsement of the ballot for town offices, nor the word "Town" the legal official indorsement for the Excise ballot; and if the provisions of the statute as to not counting ballots not properly indorsed are to be enforced, then the paster ballots for town offices, found upon the ballot indorsed "Excise," should not be counted.

For these reasons the order of the court below should be reversed and a peremptory *mandamus* issue directing the defendants to recount the ballots cast for the office of supervisor, and to exclude from such count and refrain from counting, the paster ballots found on the ballots marked "Excise," and that they issue a certificate of election to the candidate for supervisor receiving the greatest number of ballots, exclusive of ballots for supervisor pasted on the ballots marked "Excise."

Order reversed, with fifty dollars costs and printing disbursements, and let a peremptory *mandamus* issue in accordance with the views expressed in this opinion.

MAYHAM, P. J., and PUTNAM, J., concurred.

Order reversed. Peremptory *mandamus* to issue directing the defendants to recount ballots and deduce the result, excluding from such recount the paster ballots found on the ballots marked "Excise," with fifty dollars costs and disbursements.