## THE PEOPLE OF THE STATE OF NEW YORK ex rel. HENRY BRADLEY and Others, Respondents, v. THOMAS G. SHAW and Others, Composing the Board of Canvassers of the Town of Minerva, Appellants.

*Election law — interior defects of a ballot — an elector may vote for any person for any office — what does not establish the intent to make the ballot a marked one — effect of putting a paster on the outside of a ballot — Laws of 1890, chap. 262, sec. 25; 1891, chap. 296, sec. 12.*

At a caucus to nominate town officers, held on the 24th day of February, 1892, a ticket was nominated headed by William H. Sullivan for supervisor. On the same day an independent caucus was held and a ticket was nominated headed by Henry Bradley for supervisor. Certificates of both nominations were filed with the county clerk. A protest was filed with the county clerk against his printing or delivering any ballots to the election officers for the ticket nominated at the independent caucus, and this protest was sustained and obeyed by him.

The Bradley faction had paster ballots printed which, in addition to the names of the candidates for town officers, contained the name of its candidate for excise commissioner.

These paster ballots were put upon the official Sullivan ballots. At the election, which was held March 1, 1892, the canvassers refused to count any votes for the Bradley ticket.

*Held,* that as the ballots were, as to their exterior form, legal the canvassers should have counted them, leaving the courts to decide upon any defects which upon inspection might have appeared upon the ballots when opened.

That the objection that the Bradley ticket was not legally nominated was untenable.

That, under section 25 of chapter 262 of the Laws of 1890, the Ballot Reform Law, as amended by section 12 of chapter 296 of the Laws of 1891, the voter has a right to vote for any person for any office, whether or not his name is upon the official ballot.

That the fact that the name of the candidate for excise commissioner was upon the paster ballot of the Bradley faction for town officers, made it impossible to count such votes for such candidate for commissioner.

That it did not, however, vitiate the ballot as a ballot for town officers.

That while it was, in a sense, a marked ballot it could not be rejected in the absence of any evidence tending to show that it was marked with the intent of identifying it. (MAYHAM, J., dissenting upon the question of the marked ballot.)

That as the law required a marked ballot to be preserved, it could not be intended that such a ballot should be absolutely void.

That it was for the court to determine upon the question of intent; and it was not for the inspectors to reject such ballots, but merely to count, preserve and return them.

That the court, in the absence of evidence to that effect, would not presume that a ballot was marked with an intent to identify it.

That, although the law directs that a paster ballot shall be pasted on the side opposite the official indorsement, and this direction is not complied with, yet where there is no evidence that after the ballot was folded any portion of the paster ballot was visible, the ballot is legal and should be counted.

APPEAL by the defendants, Thomas G. Shaw, David Wilson, Nelson Hyatt and John Mulhern, composing the board of canvassers of the town of Minerva, Essex county, N. Y., from an order of the Supreme Court, made on the 22d day of March, 1892, and entered in the office of the clerk of the county of Essex, directing that a peremptory writ of *mandamus* issue against the defendants requiring them to reassemble as a board and declare the result of a town meeting, held in said town on March 1, 1892, allowing the relators certain paster ballots, and directing the defendants to issue a certificate to the candidates having the greatest number of ballots cast for them, including such paster ballots.

*John H. Cunningham* and *J. W. Houghton,* for the appellants.

*John Foley,* for the respondents.

HERRICK, J. :

This is an appeal from an order made at a Special Term upon the relation of Henry Bradley and others, directing a peremptory *mandamus* to issue against the defendants and appellants, composing the board of town canvassers of the town of Minerva, Essex county, directing them to reassemble in said town, as such canvassers, and declare the result of a town meeting held therein on the 1st day of March, 1892, allowing to the several relators the number of votes cast for them stated in the moving affidavits, and called paster ballots, and directing said board to issue a certificate of election to the candidates having the greatest number of ballots cast for them, including such paster ballots.

From the papers the facts appear to be substantially as follows : On the 24th day of February, 1892, a caucus or primary was held in the town of Minerva, Essex county, for the purpose of nominating candidates for town officers, and a ticket was nominated headed by William H. Sullivan for supervisor. On the evening of the same day another caucus or primary meeting, called an independent

caucus, was held in the same town, apparently by those dissatisfied with the result of the first caucus, and a ticket for town offices was nominated headed by the relator, Henry Bradley, for supervisor; certificates of both nominations were filed with the town clerk. A protest was filed with the town clerk against his printing or delivering to the election officers any ballots for the ticket nominated at such independent or second caucus, on the ground that " no votes were cast in the town of Minerva, at the last annual election or town meeting, representing any party, such as required by law, giving them authority to call a caucus to make nominations."

*Second.* " The so-called certificate of nomination is not sworn and certified to, as required by law, and is not proper in its form."

The town clerk only delivered to the election officers official ballots containing the names of candidates nominated at the first caucus, which, for convenience, we will designate the " Sullivan " ticket. The relators, composing the " Bradley " ticket, ascertaining that no official ballots would be distributed with their names on, caused paster ballots to be printed; these paster ballots, in addition to the names of candidates for other town officers, contained the name of their candidate for excise commissioner.

The statement of result shows that ninety-nine ballots were cast for Sullivan for supervisor; the other candidates on his ticket receiving from 96 to 107, and that Bradley received 110 votes for supervisor, his associates receiving from 107 to 116 votes.

The votes for the several candidates on the Bradley ticket were all cast by means of the paster ballot before described, the same appearing to have been voted by pasting them on the official ballot containing the names of the candidates on the Sullivan ticket. The defendants refused to count any of the votes for the Bradley ticket. The objections made to canvassing or counting the vote for the Bradley ticket are these :

*First.* That the candidates on the Bradley ticket were not regularly placed in nomination, pursuant to sections 2, 3 or 5 of chapter 262 of the Laws of 1890, known as the " Ballot Reform Law," and that, therefore, they were not legally candidates, nor entitled to be voted for and not eligible to office at the said town meeting.

*Second.* Because the paster ballots containing the names of the candidates on the Bradley ticket for town offices contained, in addi-

tion thereto, the name of a candidate for excise commissioner. There was the additional objection made to counting some of such paster ballots, how many is not stated, that they were pasted up on the outside of the official ballot.

So far as appears, from the papers in the case, the ballots deposited or voted were, so far as their exterior is concerned, in proper legal form, and it was the duty of the defendants to have counted them, no matter what defects appeared upon the inside when they were opened. Inspectors of election and boards of canvassers have no business to decide whether a person voted for is eligible or not, it is their duty to count the votes cast for any and every person whose name appears upon a ballot printed and indorsed as the law directs. There is a procedure provided in the law for ballots that are for any reason defective, that will be referred to later on. While it was the duty of the inspectors to count all the ballots in controversy here, and leave to the court the office of determining the legal questions involved, they have not done so, and the court must meet the questions as they are presented.

The first objection made to counting the votes cast for the Bradley ticket, that such ticket was not legally nominated, and that, therefore, they were not eligible as candidates, is not tenable. The ballot law was not intended to restrict the choice of the people, it was intended, on the contrary, to secure to them greater freedom and independence in voting, to insure to them the utmost freedom in their choice of public officers.

The title of the law is: "An act to promote the independence of voters at public elections, enforce the secrecy of the ballot, and provide for the printing and distribution of ballots at public expense."

To restrict the voter to the candidates placed in nomination by political parties, or by petitions of citizens, is very far, it seems to me, from promoting independence in voting, and the law makes no such restriction, but provides for the very reverse. Section 25 of chapter 262, Laws of 1890, as amended by section 12 of chapter 296 of the Laws of 1891, is in part as follows: "The voter may write or paste upon his ballot the name of *any* person for whom he desires to vote for *any* office. Any voter may take with him into the voting booth or compartment a printed ballot of his own selection or preparation, to be known as a paster ballot, containing the names

of all the offices to be filled, and of the candidates therefor for whom he desires to vote  *  *  *  and the voter may paste the whole of said paster ballot on any of the official ballots."

It will be observed that the statute says the voter may vote for *any person* for *any* office; and it recognizes the fact that he may desire to vote for some person or persons whose name is not upon any of the official ballots and provides that he may write or paste it on; it also affords him the means of making up an entire ticket to suit himself, of names not upon the official ballots, by means of the paster ballot.

The official ballot is simply a part of the machinery devised to insure secrecy and independence in voting; is printed at public expense to insure uniformity in the ballots, and to save candidates the expense of printing, and thus cut off one reason or excuse for raising money to be used, in fact, for corrupt purposes. While the law provides for official ballots, it does not provide for official candidates, and it is not necessary that one's name should appear upon the official ballot to enable the voters to vote for him.

The second objection to counting the Bradley ballots, the fact that the name of a candidate for excise commissioner was printed with the other town offices on the paster ballot, presents greater difficulties.

The votes cast for such candidate for excise commissioner cannot be counted for him because not upon a ticket legally indorsed as an excise ballot, as held by this court in the case of the *People ex rel. Sherman* v. *Person et al.,* decided at this term.* The serious question is, did the printing the name of the office of excise commissioner, and of a candidate therefor, upon the ballot, vitiate the ballot as to the candidates for other town offices?

In a sense, the unauthorized printing of the name of this office and the candidate therefor upon the town ballot made it a marked ballot or a defective ballot, but that does not of itself vitiate the ballot, or justify the inspectors of election or board of canvassers in rejecting it; it is only when it is marked with the intent that it may be identified that it is to be rejected, and that rejection is not to be by the inspectors. Section 16, chapter 296, Laws of 1891, provides that such ballots shall be preserved with a statement of the

* Reported, *ante* p. 327.

objections made to them, that they shall be counted in estimating the result of an election, and then provides for a judicial proceeding to determine their validity. The ballot is not to be excluded until the intent is ascertained and determined by the court. (*Nichols Case*, 129 N. Y., 407.)

The only reason that is assigned for excluding these ballots from the estimate of votes is that they are, in effect, marked ballots. But the law assumes that there may be ballots with marks upon them that may be counted, otherwise why preserve them for the court to say whether they shall be counted or not. If all marked ballots are to be rejected; if the fact that some mark, name or word, not authorized by law, appears on the inside of a ballot, is of itself the evidence and proof that it was placed there with the intent that the ballot may be identified, there would be no object in preserving the ballot for the court, there would be nothing for the court to pass upon, nothing to determine except that there is something on the ballot not authorized by law. It seems to me that the plain meaning and intent of the statute is, that the court shall determine whether the mark on the ballot is placed there with the intent of subsequently identifying the ballot and tracing it to the voter; and if it can find no such intent, then the ballot is to remain as counted. I realize the difficulties that must necessarily arise from such a construction. Proof of a fraudulent intent must always be difficult and sometimes impossible, and permitting any ballot to be counted that has anything upon it except what the law authorizes, doubtless opens the way to marking it with intent to identify the voter.

The other construction, that is, rejecting every ballot having anything upon it not authorized by law, without any further proof of intent, is also subject to serious objections, and would open the door to just as great dangers.

The ballots may be marked by the adverse party for the very purpose of having them rejected; dishonest election officers may mark them to afterwards reject them in the count; and then having marked and rejected them immediately destroy them, as was done in a case recently before us, leaving no trace of their wrong-doing, nothing for the court to pass upon; such a construction would place

our elections completely in the hands of the innumerable boards of inspectors in the State; the rejection of a few ballots in each election district, or even a portion of them, changing the result of a State election.

Upon the whole, it seems to me that the safest course is to leave nothing for the inspectors to do except to count the ballots in the box; they are prohibited from receiving any having any mark on the outside, or not properly indorsed; and if anything appears on the inside of the ballot not authorized by law, to preserve such ballot; then those interested have ample opportunity to deliberately investigate the matter, and after such investigation, if they think proper, present it to the court for its determination.

But whichever course may be best is not for the court to determine; it cannot legislate; it can only interpret and construe, and I cannot see any other interpretation or construction to be given to the statute except the one I have indicated; that is for the court to determine in each particular case whether the marks or unauthorized words were placed upon the ballots with intent to identify the voter. Was, then, the name of a candidate for excise commissioner placed upon the town ballot for the purpose of identifying the voter? There is nothing in the case before us to show that it was; all the ballots for the Bradley ticket were alike in that respect; the same candidate appeared on all the ballots, and, so far as the case discloses, there is nothing to indicate any unlawful or corrupt intent, except the bare fact that the name of such candidate appeared not upon a ballot indorsed "Excise" as the law requires, but on the paster ballot for other town offices; and, so far as appears in the case, they had no separate ballot for excise commissioner.

To hold, under such a state of facts, that these ballots were marked for the purpose of identification, within the meaning of the law, would be to hold, in effect, that whenever any name, word or mark not authorized by law appears upon a ballot, that that fact, in and of itself, is evidence that it was placed there with the intent of subsequently identifying the voter, such a holding or construction we have already seen is not warranted by the wording of the statute. I, therefore, cannot find that the paster ballots in question were printed or marked with the intent that the same might be identified, consequently they should not be rejected for that reason.

The remaining objection to be considered is that some of the Bradley paster ballots, how many does not appear, were pasted on the outside of the official ballots. If the paster ballot is so affixed to the official ballot as to disclose for whom the voter is voting, then the ballot should neither be received nor counted, because then it would be in violation of the secrecy of the ballot, and would afford a means of identifying the voter, but in this case it does not appear whether it was so affixed or not. The provisions of the statute are as follows:

*First.* That it shall be pasted " on the side opposite the official indorsement."

*Second.* " A paster shall be so attached to the ballot that when the ballot is folded no portion of such paster ballot shall be visible." (Laws of 1891, chap. 296, § 12.)

A voter should not be deprived of his vote, except at the behest of some plain and clear requirement of the law. Reading the two clauses I have quoted together, it seems to me that the first one is directory merely ; that the essential, and, therefore, the mandatory one, is the second; that is the one that requires that it should be so attached as not to be visible.

The case does not show whether the paster ballots in question were so attached as to be visible or not, and the court has no right to assume that the law was violated. There is not sufficient evidence before us to warrant the court in rejecting the ballots for the manner in which they were attached to the official ballots.

Some of the affidavits state that some of the Bradley ballots were marked for identification, but do not state how they were so marked or how many there were of them ; and they have not been preserved as the law requires, so that we have nothing before us to pass upon or determine in that regard.

This disposes of all the objections made to counting the Bradley ballots, and we find in none of them any sufficient reason for rejecting such ballots.

Let the order for a peremptory *mandamus* be affirmed, with fifty dollars costs and printing disbursements.

PUTNAM, J., concurred.

MAYHAM, P. J. (dissenting) :

I fully concur in all of the conclusions reached by my brother HERRICK in this case, except that relating to the effect of voting on

the town ballot for the commissioner of excise; but I cannot concur with him as to the effect of placing that name on the ticket. It appears to me that that was such a marked ballot and cast under such circumstances as to vitiate the entire ticket on which it was voted.

By section 38 of chapter 262 of the Laws of 1890, known as the Ballot Reform Law, as amended in chapter 296 of the Laws of 1891, it is provided that "the names of candidates for the office of excise commissioner shall be printed in a different ballot from the one containing the names of candidates for other town offices. Such ballot shall be indorsed " Excise " and shall be deposited, when voted, in a separate box which shall also be marked " Excise." * * * The ballots containing the name of candidates for other local offices shall be indorsed " Town." Each of the paster ballots of the Bradley ticket voted contained the name of John McCardle for commissioner of excise, pasted upon the official ballot marked " Town."

It is agreed that this vote cannot be counted for excise commissioner, because not upon a ticket legally indorsed. (*People ex rel. Sherman* v. *Persons et al.*) It follows, therefore, that the name and designation of McCardle constituted no part of the ticket indorsed " Town," and was, as has been said in the prevailing opinion, in a sense, an unauthorized name and mark upon the town ballot. Did it, *per se*, vitiate that ballot? Or must there be evidence *aliunde* the marked ballot itself that it was done for the illegal purpose of its subsequent identification? It seems to me that a more direct and effectual method of evasion and nullification of the law could not well be suggested than that of placing an unauthorized name of office on an official ballot; and yet to hold that these were marked ballots, voted in violation of the Ballot Reform Law, and, therefore, not capable of being counted, will, in effect, disfranchise more than one-half of all the voters who voted at this town meeting. Consequences so grave and far-reaching should not be visited upon the voter, unless the courts, in administering this law, are, by its letter and spirit, required to inflict such disfranchisement. In interpreting this law, so vitally affecting, the voter on the one hand and the great public interest to be subserved on the other, the court should carefully avoid what is sometimes called judicial legislation

by importing into it matters not placed there by the legislature; or, on the other hand, what would be equally unauthorized, repealing, by judicial interpretation, any of its provisions.

One of the leading purposes manifestly aimed at in the enactment of the law was that the ballot cast by each voter should be absolutely secret. As was said by O'Brien, J., in the *People ex rel. Nichols* v. *The Board of County Canvassers of Oneida County* (129 N. Y., 402): "The general policy and scope of the act is well expressed in its title." "An act to promote the independence of voters at public elections, enforce the secrecy of the ballot, and provide for the printing and distribution of ballots at public expense." In the discussion of the requirements of this act, so far as it relates to the secrecy of the ballot, the judge uses this language: "The primary aim and object was to enable the voter to cast a ballot for the candidates of his choice, without the possibility of revealing, by the act of voting, the identity or the political complexion of the candidates voted for." The manifest object of the legislature in making the ballot absolutely secret was to minimize the great and growing evil of bribery of the voter, by removing all possible means of knowledge on the part of the bribe giver that the vote for which he gave or contracted to give the bribe would be deposited according to contract; and, further, to secure to the employee immunity against the oppressive coercion of his employer, and thus to secure to the employee the right of a free ballot.

It is difficult to see how this central idea of secrecy, which seems to be the soul of the Ballot Reform Law, can be effectual for any of the beneficial purposes for which it was intended, if the method adopted in the Bradley ballot can be adjudged to be legal and that ballot upheld and counted. It does not seem sound or logical to hold that numbers give immunity, and that because there are over one hundred violations of the ballot law, that, therefore, the act escapes its condemnation; such reasoning would not commend itself to our judgments as sound in almost any other moral or legal question. If but one, or ten, or even twenty such ballots had been found in the box, it will hardly be questioned that they would be denounced as marked ballots and rejected from the count, unless this method of marking ballots can be held to be allowable under the law. If it can be held that ballots marked in this manner must

be counted for all the candidates properly voted for on the ticket designated "Town," then the door would be opened at every town election for persons desiring to promote the election of the candidates of their choice to place on a paster ballot the name of some person for an office not to be voted on the town ticket, and, with that sure mark of identification, contract for the payment of a bribe to each person who receives that ticket from him, and shows by the vote, when canvassed, that the contract was performed; and that the same scheme may be worked by an employer upon his employee and the purity and freedom of the ballot be thus completely destroyed, and the law, which was designed to protect the purity and sanctity of the ballot, become an instrument of most gigantic fraud.

But it is urged that, by section 35 of the Ballot Reform Act, as amended, it must be shown that the vote was marked and cast with the intent that it shall be afterwards identified before the ballot is vitiated, and that the court must find that intent before the vote can be rejected. The language of that section, as amended upon this subject, is as follows: "No voter shall place any mark upon his ballot, or do any other act in connection with a ballot, with the intent that it may be identified as the one voted by him; no person shall place any mark upon or do any other act in connection with a paster ballot with the intent that it may afterwards be identified as having been voted by any particular person. When a ballot has been deposited in a ballot-box, upon which, or upon a paster affixed thereto, a writing or mark of any kind has been placed by the voter, or by any other person to his knowledge, with intent that such ballot shall afterwards be identified as the one voted by him, the same shall be void and of no effect."

It is manifest that the legislature by this provision required that the marked ballot must, to be adjudged void, be deposited by the voter with knowledge and with the intent that it shall be afterwards identified, but the act furnishes no rule of evidence by which the court shall judicially declare and decide that question of knowledge and intent.

Resort must, therefore, be had to the general rules of evidence for the determination of those facts. We start with the presumption that knowledge of the law is to be imputed to the voter, and that when he voted for a commissioner of excise on the town ticket he

did so knowing that that office could not be legally voted for on such a ticket, and that his name on it made such a ticket a marked ballot. The town ticket must contain only the names and designation of the officers to be voted for on it. In the case of the *People ex rel. Nichols* v. *The Board of Canvassers (supra)*, GRAY, J., in discussing that question, uses this language: " The plan embodied in the law was to have a uniform ballot. That essential feature was secured by provisions requiring all ballots to be prepared by a public officer, and to be exactly alike in every possible respect externally in the official indorsement, and differing internally only in the candidates for office, upon the ballots prepared for the different political parties."

This language applies as well to a paster ballot voted upon an official indorsement as to the official tickets printed in full by the clerk or under his direction. With the legal presumption to which we have referred, and which obtains in this case, it follows that the voter who deposited the town ballot containing the name and designation of a candidate for excise commissioner, did so charged with the knowledge that he was voting a marked ballot. Did he intend that it should afterwards be identified as a ballot voted by him? Of this there is, and from the very nature of the case there can be, no proof, except from the legal inference to be deduced from such act. The law raises a presumption that every person intends the legal consequences of his acts. One of the legal consequences of the act of voting a marked ballot is that it may be identified; and if that was the consequence intended by him, then both conditions, to render the ballot illegal, void and of no effect, are established. It is true that the methods of reasoning by which this conclusion is reached may be somewhat subtle, yet the difficulty to be encountered in the enforcement of this much-needed and salutary law not only justifies strict construction but calls upon the courts to adopt all the legal and legitimate means in their power to give effect to its provisions. In the present case, as has been suggested, the rejection of the ballots thus shown to be marked may look like the disfranchisement of the voters, but that was the result of disobedience of the law. In the case of *People* v. *Board of Canvassers* (cited *supra*, and upon that subject), O'BRIEN, J., says: " But it is said that this result will disfranchise the electors who

cast these ballots, in good faith, believing that they were the proper official ballots.

The answer is, that when an elector attempts to express his will at an election, by the use, through either design or accident, of ballots which the law declares shall not be counted, the courts have no power to help him. Had these ballots been misplaced by design or some preconcerted arrangement between the county clerk and the candidates whose names appear thereon, or some of them, the voter using them might be as innocent then as they appear to be in the case at bar; but to hold, under such circumstances, that the votes must nevertheless be counted, would be to suggest an easy method of defeating the fundamental purpose of the statute."

These reasons apply with equal, and I think with greater, force to the altered ballot by the use of a name and an office not entitled to be voted for in the ticket, as to the numbering on the label or indorsement on the outside of the ticket. It is safe to say that if this method can be resorted to and ballots thus marked can be voted and counted, the facilities for bribery and coercion have been vastly increased by the provisions of what was intended to be a ballot reform law. But it is insisted that the construction contended for is dangerous in this, that the inspectors of election would have it in their power to throw out ballots on the ground that they were marked, and thus completely change the result of an election. I do not think that such a result could follow, for the reason that they are required to preserve all defective ballots, and this kind of ballot is a marked, and, therefore, defective ballot; and the inspectors would have no right to destroy it, but must retain it; and thus the questions as to the character of the vote and the right of having the same counted could be brought before the courts for their determination. It is only in case of improper or unauthorized label or caption appearing on the outside of a ballot that the inspectors are authorized and required to reject the vote altogether. If the alteration or defect appears on the inside of a ballot, which can be known to the inspectors only on the canvass of the votes, the inspectors are to treat it as a defective ballot and preserve and return it, with their certificates, so that a party aggrieved or having any interest in the result may take the case to the courts, where the right of the parties may be judicially declared as in the case at bar.

The question, therefore, is, not what the inspectors may do, but what the court will do where the court is satisfied, from the certificate of the canvassers, that ballots sought to be counted are concededly marked so that they may be identified if desired, and when the voter knew, or is presumed to have known, that he was voting a marked ballot at the time of casting the same. Under such circumstances, it seems to me that the intention of the voter must, as I have attempted to show, be presumed from his act; and that any attempt on the part of the court to find an innocent motive and thus uphold the ballot, would be vesting in the court the exercise of a discretion not given by law; and while its exercise may not be fraught with the danger that might be apprehended from the exercise of such discretion by the inspectors of election, yet it is one which the courts should not voluntarily assume, where, by the application of legal rules, the ballot is by the law denounced as a marked ballot.

I am, therefore, of the opinion that the order awarding a peremptory writ should be reversed, and the writ should be quashed.

Order for a peremptory *mandamus* affirmed, with fifty dollars costs and printing disbursements.