CHARLES N. WILLIAMS, Appellant, v. NATHANIEL C. BOYNTON, as County Clerk of the County of Essex, Respondent.

*Resolution requiring a majority vote of members elected to a board of supervisors — a member seated but not elected is not, as a de facto officer, to be counted — a validating statute, when ineffective.*

The Essex county board of supervisors, authorized by law, by a majority vote of all the members elected thereto, to fix or change the site of any county building, by a vote of ten out of eighteen supervisors, passed a resolution changing the site of the county buildings of Essex county, eight supervisors voting against the resolution. The chairman of the board decided that the majority of the supervisors elected did not vote for the resolution, and that it was lost for the reason that two of the supervisors, Sullivan and Moynehan, who voted in favor of such resolution, had not been elected supervisors.

In an action brought to prevent the submission of the question of removal of the buildings, etc., to the electors of Essex county, it appeared that Sullivan received the certificate of election from the town canvassing board, but that a mandamus had issued requiring such board of town canvassers to reassemble and declare the result of the said town meeting, and to issue a certificate of election to the candidate having the greatest number of votes, pursuant to which the town board of canvassers met, and upon such recanvass, Sullivan's opponent was declared elected to the office of supervisor and a certificate was issued to him, and he took, filed and recorded the oath of office and gave and filed the requisite security as such supervisor, and thereafter an order was made by a justice of the Supreme Court directing Sullivan to deliver the books and papers, pertaining to the office of supervisor of such town, to his opponent.

The board of supervisors, however, appointed a committee on contested seats, to which was referred the question of the contested seat occupied by Sullivan, and such committee made a report recommending the seating of Sullivan. Its report was adopted and Sullivan sat with the board of supervisors and voted for the resolution.

*Held,* that the act of Sullivan in voting for the resolution was not within the line of action of a *de facto* officer, which, out of motives of public policy, the law would uphold;

That neither as an elected or *de facto* supervisor was he entitled to vote upon such resolution, and that the resolution consequently did not receive the votes of a majority of the elected members of the board of supervisors.

An act of the Legislature, (Chapter 148, Laws of 1893), legalizing, ratifying and affirming the action of a board of supervisors in relation to changing the site of a county building, where such action of the supervisors was not in conformity with the provisions of the general law (required by section 18 of article 3 of the State Constitution), providing for the change of a county seat, is void and of no force and effect as a validating statute.

APPEAL by the plaintiff, Charles N. Williams, from a judgment of the Supreme Court dismissing the plaintiff's complaint, entered in the office of the clerk of the county of Essex on the 9th day of August, 1893, after a trial before the court at the Essex Special Term.

*Richard L. Hand,* for the appellant.

*Chester B. McLaughlin,* for the respondent.

HERRICK, J. :

This action is brought by the plaintiff as a taxpayer and resident of the town of Elizabethtown in the county of Essex in this State, asking the court to adjudge that no legal or valid resolution for the removal of the site of any building or change of location of any county offices in the said county of Essex has been adopted or passed by the board of supervisors of said county, and that the action had in said board in the year 1892 in that respect was and is without jurisdiction, illegal and void, and also asking that the defendant be perpetually enjoined and restrained from providing any official ballots, sample ballots or instruction cards, or distributing the same, and from incurring any expense, or doing any other act or thing, for the purpose of submitting the question of the removal of buildings or changing the location of offices, to the electors of the said county of Essex.

The plaintiff's complaint was dismissed at the Circuit, and from the judgment entered thereon the plaintiff appeals to this court. The facts, so far as they are necessary to be stated for the purpose of this appeal, are as follows: Chapter 686 of the Laws of 1892, known as the County Law, provides, among other things, for the location and change of location of county buildings. Section 31 of said act provides that: "The board of supervisors may, except in the county of Kings, *by a majority vote of all the members elected thereto,* fix or change the site of any county building and the location of any county office; but the site or location of no county building or office shall be changed when the change shall exceed one mile, and shall be beyond the boundaries of the incorporated village or city where already situated, except upon a petition of at least twenty-five freeholders of the county, describing the buildings or office, the site or location of which is proposed to be changed, and the place at or near which it is proposed to locate such new buildings or office."

The law further provides for the publishing of such petition and notice of its presentation to the board of supervisors.

Section 32 provides that: "On the presentation of such petition and notice, with due proof of their publication, if a majority of all the members *elected* to such board vote in favor of a resolution for the removal of the site of the buildings described in such petition, to the site also therein described, or the change of the location of its county offices or any of them, said board shall thereupon direct that such resolution, together with the notice that the question of such removal will be submitted to the electors of the county at the ensuing general election, be published in at least two newspapers published in the county, to be designated by the board, once in each week for six consecutive weeks, immediately preceding such general election. Such resolution and notice shall be published accordingly."

A petition and notice was presented to the board of supervisors of Essex county.

Some questions have been raised in regard to such petition and notice and the proof of publication thereof, but the view that I have taken of this case renders it unnecessary to discuss them.

The board of supervisors of Essex county consists of eighteen

members; a majority of the members elected would consequently be ten. On the seventh day of December a resolution, pursuant to the petition presented, providing for a change of the county buildings from Elizabethtown, where they are at present located, to the village of Port Henry, more than one mile from and beyond the boundaries of the village where they are now located, came up to be acted upon by said board of supervisors; of those present and claiming to act as supervisors, ten voted in favor of the passage of such resolution, and eight against the same. The chairman of the board of supervisors decided that a majority of all the supervisors elected to the board did not vote for the resolution, and that it was lost; and stated as his ground for such decision, that two of the persons, one named Sullivan, and one named Moynehan, had not been elected supervisors; the decision of the chair was appealed from, and by the votes of the same persons who voted for the passage of the resolution, the decision of the chair was overruled, and subsequently and by the same persons a resolution was passed directing the resolution and notice that the question of such removal would be submitted to the electors at the ensuing general election, to be published in three newspapers named in such resolution.

It appears by the proceedings in the case that at the town election held in the town of Minerva, Essex county, in March, 1892, Henry Bradley and William H. Sullivan were opposing candidates for the office of supervisor; paster ballots containing the name of Mr. Bradley, and affixed to the official ballot, were voted at such election.

The town board canvassing the ballots rejected and refused to count the paster ballots containing the name of Bradley, and gave the certificate of election to Sullivan. Including the paster ballots Bradley had the majority of the votes cast at such election. A mandamus was then issued requiring such board of town canvassers to reassemble and declare the result of the said town meeting, and to issue a certificate of election to the candidate having the greatest number of ballots cast for him, including such paster ballots. The order directing the issuing of such mandamus was appealed from to the General Term of this court, affirmed by the General Term, then taken to the Court of Appeals, and on the seventeenth day of June the order of the General Term was affirmed by the Court of Appeals.

It appears that thereafter the town board of canvassers met, recanvassed as directed by the court, and upon such recanvass Bradley was duly declared elected to the office of supervisor, and a certificate of his election was duly issued to him, signed by the officers who acted as such canvassers; that thereafter Bradley duly took and filed the requisite oath of office, and gave and filed the requisite securities as such supervisor; that thereafter, and on the 4th day of August, 1892, an order was granted by a justice of this court directing the said William H. Sullivan to deliver the books and papers pertaining to the office of supervisor of said town, in his possession, to the said Bradley, which order was appealed from to the General Term, and was affirmed by the General Term on the 8th day of December, 1892, which order of affirmance was entered on December 13, 1892. The Essex county board of supervisors met November 14, 1892, and appointed a committee on contested seats, to which was referred the question of the contested seat from the town of Minerva. This committee, claiming to act under section 7, subdivision 1, chapter 482 of the Laws of 1875, which authorized boards of supervisors, where there is no determination by the court upon the subject, to determine all cases of contested membership in their boards, proceeded to determine who should represent the town of Minerva in the board of supervisors. The law under which they claimed to act, chapter 482 of the Laws of 1875, had theretofore been repealed by chapter 686 of the Laws of 1892. (See schedule of laws repealed, page 1798, Session Laws of 1892.)

Not only did they proceed without authority of law to make the investigation and determination, but their own report shows that they knowingly and willfully violated the law; it shows that they knowingly recommended the seating of the person who had received a minority of the votes cast, and that they did it in, what they believed to be, opposition to the decisions of the courts of the State. Their report, after reciting the various proceedings taken before the courts, and the decisions of the courts thereon, recommended that William H. Sullivan be allowed to sit as a supervisor representing the town of Minerva for the year 1892. After making such recommendation the committee attempted to justify their action in the following language: " Your committee believe that they are justi-

fied, warranted and upheld in this conclusion by the case of *Osborne* v. *Deane,* in the 15th Dutchess, Columbia and Putnam senatorial district of this State, where the board of county canvassers refused to count the vote cast for Deane until compelled to do so by order of the highest appellate court of the State, which order was obeyed in that case, as it was in the case of the town board of Minerva. Yet the returns made by the irregular board of county canvassers were recognized by the State Board of Canvassers, and Osborne was allowed to sit as senator from the 15th district on a minority vote, Deane having received a majority of the votes cast in said district."

Extended comment upon this proceeding is unnecessary. The report of the committee was adopted by the board of supervisors, and Sullivan sat with the board of supervisors, and, as we have seen, voted for the passage of the resolution to change the location of the county buildings. The legality of his vote is sought to be upheld upon the ground that he was a *de facto* supervisor. It seems to me that the act of Sullivan in voting for this resolution is hardly within the line of action of a *de facto* officer, that out of motives of public policy the law will uphold. The question of who are *de facto* officers, and under what circumstances the acts of persons unlawfully holding office will, out of motives of public policy, be held valid, has been the subject of much controversy, and has been frequently passed upon by the courts. I think the leading case upon that subject in this country is perhaps that of *The State* v. *Carroll* (38 Conn. 449), where the following broad and comprehensive definition is laid down : " An officer *de facto* is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice will hold valid, so far as they involve the interests of the public and third persons, where the duties of the office were exercised.

" *First.* Without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people without inquiry, to submit to or invoke his action, supposing him to be the officer he assumed to be.

" *Second.* Under color of a known and valid appointment or election, but where the officer had failed to conform to some precedent requirement or condition, as to take an oath, give a bond, or the like.

" *Third.* Under color of a known election or appointment, void

because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power or defect being unknown to the public.

" *Fourth.* Under color of an election or appointment by or pursuant to a public unconstitutional law before the same is adjudged to be such."

Sullivan cannot be said to be acting under either the second, third or fourth clauses of this definition, neither do I think his act can be said to be one of those mentioned in the first, for neither by reputation or acquiescence was he acting or holding office under such circumstances " as were calculated to induce people without inquiry to submit to or invoke his action, supposing him to be the officer he assumed to be," for at the time of his voting his right to vote was publicly challenged upon the ground that he was not a supervisor, so that no one need to be induced without inquiry to submit to his action in that respect; the only people who are called upon at this time to submit to his action are the members of the board of supervisors and the county clerk, and as to them it seems to me that he is not holding office " under such circumstances of reputation or acquiescence as were calculated to induce people without inquiry to submit to or invoke his action, supposing him to be the officer he assumed to be." The acts of *de facto* officers are upheld as matter of public policy to prevent a failure of justice, to permit the orderly transaction of public business, and to protect the interests of the public and individuals where those interests are involved by the acts of persons exercising the duties of public officers without being legal officers. In this case individual interests are not involved; no rights have been vested; nothing has been done upon the faith of the act in question by any individual; no one has yet acted upon the faith of it; neither do I see that any public interests are affected; nothing has as yet been done that, as a matter of precedent or rule for future action, requires that as a matter of public policy the acts of Sullivan should be sustained as those of a *de facto* officer; to do so, would be to hold that persons without semblance of right, after decisions of the courts of last resort adversely to their claims, may by physical force retain possession of the offices they have thrust

themselves into, and be recognized as the lawful holders thereof. Such a doctrine, it seems to me, is contrary to sound public policy and will cause more trouble and confusion than to hold the acts of persons performing the duties of public officers under such circumstances invalid as to all the world. Sullivan's only claim of title to the office of supervisor was under the certificate of election given to him by the board of town canvassers, and the evidence in the case shows that he was not elected a member of the board of supervisors, and the certificate of election awarded to him was set aside by the decision in the case of *People ex rel. Bradley* v. *Shaw* (133 N. Y. 493). (See, also, *The People ex rel. Bradley* v. *Supervisors*, 69 Hun, 406.) That is a matter of public record of which all persons are presumed to have knowledge.

The case also shows that upon a recanvass, held pursuant to those decisions, Bradley had a majority of the votes, and that a certificate of election was awarded to him.

Sullivan's claim to office is not acquiesced in; it is a matter of record in the courts that he is not entitled to it; he holds it against the protest of the lawfully elected person, against the successful appeal of that person to the courts of the State, holds it by force and by the arbitrary action of himself and the members of the board of supervisors; the validity of his act that we are called to pass upon was not at any time acquiesced in, but was challenged when it was being done, and before it can become operative, the aid of the court is sought to prevent its becoming operative, and that aid is sought before either the public or individuals have taken any action upon the faith of his act. The rule as to the recognition of *de facto* officers and their acts has limitations, and, among others, those limitations are as to such acts as are arbitrary and voluntary, and do not affect public utility. (*Board of Education* v. *Fonda*, 77 N. Y. 350.) Here we certainly have an arbitrary, voluntary case of usurpation, and the request is that we interfere before the public interests are affected by the results, and I cannot see how our refusal to recognize Sullivan as a *de facto* supervisor, and his act as valid, will adversely "affect public utility."

It must, therefore, I think, be held that Sullivan was not a *de facto* supervisor, whose act in voting for the resolution should be sustained from any reason of public policy.

The County Law, as we have seen, requires that a resolution to change the location of county buildings shall be passed by the majority of members *elected;* that neither as an elected or a *de facto* supervisor was he entitled to vote upon such resolution; consequently it did not receive the votes of the majority of the *elected* members of the board of supervisors, and it follows therefrom that the question as to the change of county buildings could not legally be submitted to the electors of the county by authority of such action of the board of supervisors.

If I am correct in my conclusions as to the right of Sullivan to sit and vote as one of the board of supervisors, it is unnecessary to pass upon the qualifications of Moynehan as a member of such board. It is contended, however, that the proceedings of the board of supervisors have been legalized by chapter 148 of the Laws of 1893, reading as follows: "All proceedings, votes and resolutions taken and adopted by the board of supervisors of the county of Essex at its annual meeting, held in November and December, eighteen hundred and ninety-two, in relation to changing the site of the county buildings of such county, are hereby legalized, ratified and confirmed, so as to be of the same force and effect as if all the persons sitting as members of such board of supervisors, taking part in such proceedings and voting upon the questions and resolutions relating thereto, had been duly elected and qualified members of such board during such meeting."

That the Legislature has power to validate by subsequent legislation acts done under an assumed execution of statute authority which has not been strictly followed is undoubted, provided that the act done, or the manner in which it has been done, is such that the Legislature might have authorized it to have originally been done, or done in that way; that which, however, the Legislature could not originally authorize to be done, having been done, it cannot legalize by any subsequent act of legislation. (*Town of Duanesburgh* v. *Jenkins,* 57 N. Y. 177; *Williams* v. *Town of Duanesburgh,* 66 id. 129; *Tifft* v. *The City of Buffalo,* 82 id. 204; *Ensign* v. *Barse,* 107 id. 329.)

The question then arises as to the power of the Legislature to authorize the acts in the beginning. It will be seen by reading the legalizing act that it professes to legalize and ratify the proceedings

of the board of supervisors so that they shall have the same force and effect as if the persons sitting as members of such board and taking part in its proceedings had been duly elected and qualified members of the board.

As an adjudication of the right and title of Sullivan to his seat in the board of supervisors, the act cannot be held to be of any force or effect, because the Legislature is not clothed with any such power, except in the case of its own members.

So far as it can be construed as an attempt to qualify any persons not having been legally members of the board of supervisors, with the powers of supervisors, it seems to me it must fail; I have not been cited to any authority, nor have I been able to find any, giving any such power or authority to the Legislature. A supervisor cannot be created by legislative enactment; the office of supervisor is a constitutional office (see N. Y. Const. art. 3, § 22) and is elective. And to clothe any person with the powers of a supervisor who has not been elected, would be an act in direct conflict with the spirit and intent of that portion of the Constitution making supervisors elective. But it is said that the Legislature might have originally provided for the passage of resolutions like the one in question by the vote of a majority of the supervisors present and voting, or that it might have provided for the submission of the question to the people of the county without its having previously passed the board of supervisors; that is undoubtedly true, if the Legislature had so authorized it to be done by a general law, but I do not think it can single out Essex county alone and provide a special proceeding for matters of this kind in that county; it must proceed by general laws. Section 18, article 3 of the Constitution provides that "The Legislature shall not pass a private or local bill in any of the following cases: * * * Locating or changing county seats." And again, in the same section it is provided that "The Legislature shall pass general laws providing for the cases enumerated in this section." The directions as to what they shall pass is just as mandatory as the prohibition as to what they shall not pass; and the last clause quoted is a command, among other things, to pass general laws for the "locating or changing of county seats."

Pursuant to that command they have passed a general law providing for the locating or changing of county seats, which is

embraced in chapter 686 of the Laws of 1892, and to hold that chapter 148 of the Laws of 1893 is a valid law is to except Essex county from the provisions of the general law and, in effect, to uphold a local law providing for the changing of the county seat. It is said that this act does not change the county seat; that is true, but that does not relieve it from the prohibition of the Constitution; it is a law regulating the method and procedure by which the change shall be made and applicable to Essex county alone.

I do not understand that when the Constitution says that the Legislature shall pass general laws providing for the cases where it prohibits the passage of local laws, that it is to be considered as meaning that they are to pass general laws actually locating or changing county seats, but laws regulating the manner and providing for the procedure by which county seats shall be located or changed and a law providing a special procedure for one county alone comes within the constitutional inhibition.

For these reasons I think chapter 148 of the Laws of 1893 must be held void and of no force and effect as a validating statute, and that the judgment herein should be reversed, and that judgment should be granted according to the prayer of the complaint.

MAYHAM, P. J., and PUTNAM, J., concurred.

Judgment reversed and judgment directed, adjudging that no valid resolution for the change or location of any county office of the county of Essex was adopted by the board of supervisors of Essex county at its sessions in 1892, and restraining the defendant from printing or distributing any ballots or incurring any expense for the purpose of submitting the question of the removal of the public buildings or changing the county seat of Essex county to the electors of the county of Essex, pursuant to any resolution purporting to have been passed by the board of supervisors of Essex county during the session of 1892, with costs and disbursements.