HARDIN, P. J.
In June, 1891, Robert Harris addressed his petition to the county court of the county of Monroe, which was verified, in which he stated that he was the owner and possessor of certain “swamp, bog and other low and wet lands, situated in the town of Penfield, county of Monroe, and state of New York, and being desirous to drain the same, and who also deem it necessary, in order thereto, that a ditch or ditches, or other channels for the free passage of water, should be opened through lands belonging to your petitioner and another person or persons,” and? that he deemed “it necessary for the public health that such lands should be drained.” The petition further stated that the ditch or ditches or other channels should commence at a certain point,, and run in certain enumerated directions to a certain highway, “of sufficient distance to gain a suitable fall for drainage purposes, following substantially the course of the present ditch.” The petition also stated that it was necessary for a lateral ditch; 'and it stated the names of all persons, “so far as he (the petitioner) has'been able with due diligence, to ascertain the same, and who are the owners of all lands to be affected.” The prayer of the petition was for the appointment of three commissioners, “with all the powers and duties conferred under and by virtue of chapter 888 of the Laws of the State of New York, passed by the legislature in the year 1869, relative to proceedings for the drainage *355 '•of swamp, marsh and other low and wet lands, and for draining iarm lands, and all acts amendatory thereof.” The petition was presented to the county court on the 22nd of June, 1891, and an order was made by that court appointing three commissioners—■ “To hear and determine: First. Whether it is necessary, in order to drain such lands, that a ditch or ditches, or other channels for the free passage of water, should be opened through lands belonging to others than the petitioner. Second. Whether it is necessary for the public health that such lands should be drained. Third. To talte other and further steps with reference thereto as provided for by the general drainage law of this state, * * * as amended by chapter 888 of the Laws of 1869; * * * and the said commissioners are hereby given the full powers and authority conferred upon commissioners by said title of the Revised Statutes and said act of 1869, and various acts amending the same; and that a commission issue to said commissioners, under the seal of this court, for such purposes.”
Subsequently, and in July, 1891, Guy McGowan and five other persons presented a petition containing somewhat similar language to that already quoted from the petition of Harris; and on the 13th of July, 1891, an order was made that the proceedings under the last-named petition “be continued and consolidated as petitioners with the proceeding or petition presented by Robert Harris, of the town of Penfield,” and substituting George W. Clark, as commissioner, in the place of George Salmon, who had resigned. The commissioner's named in that order were authorized to—
“Hear and determine: First. Whether it is necessary, in order to drain such lands, that a ditch or ditches, or other channels for the free passage of water, should be opened through lands belonging to others than the petitioners, Robert Harris, Guy McGowan and others. Second. Whether it is necessary for the public health that such lands should be drained. Third. To take such other and further steps with reference thereto as are provided by the general drainage law of this state (title 16, chap. 8, part 3, of the Revised Statutes, as amended by chapter 888, and the acts amendatory to the said acts of 1869). * * * Fourth. That a commission issue to said commissioners, Smith, Clark and Titus, under the seal of this court, for such purposes.
On the 3rd day of August, at a term of the county court, the papers and proceedings were read, and the parties were heard, and it was ordered “that the above-mentioned order of consolidation in these proceedings be, and the same is hereby, in all respects, confirmed.” That order was entered in the Monroe county clerk’s office on, the 8th of August, 1891. The commissioners took the usual oath of office, and entered upon the discharge of their duties, and viewed tire lands mentioned in the petitions, “and found water standing in considerable quantities” on certain lands mentioned in the report, and their report states, viz.:
*356 “On the 11th day of April, 1892, at which all of said commissioners were present,” as appears by the report, they did “determine that it is necessary, in order to drain the lands described in said petition, that a ditch for the free passage of water shall be opened through lands belonging to others than the petitioners; and we have further determined at such meeting, and do hereby determine; that it is necessary for the public health that such lands should be drained; and we further report that the minutes of the testimony taken by us, and of our proceedings in the said proceedings, are hereto annexed, marked (B.’ ” That report was signed by two of the commissioners, and a minority report was made by Commissioner Clark, dissenting “from so much of the foregoing report as determines that it is necessary for the public health that said lands should be drained.”
And in his dissenting report he further stated:
“I do hereby report, and I do hereby determine, that it is not necessary for the public health that said lands should be drained.”
On the 30th of April, 1892, an appeal was taken to the county .court from the said determination. That appeal seems to have been heard at a term of the, county court in 1895, and a decision and opinion delivered and filed in August, 1895. The learned judge who presided at the-term of the court, among other things, in the course of his decision, said, viz.:
“Upon the whole case, I am unable to find that the drainage of these lands is necessary for the public health.”
That conclusion was followed by the following language:
“A determination may be entered in the minutes of the court that the lands of the petitioner are agricultural lands; that the same are swampy, low, or wet lands; and it is necessary, in order to drain such lands, that a ditch or ditches, or other channels for the free passage of water, should be opened through the lands belonging to the persons other than the petitioners whose names are set forth in the petition in this proceeding.”
It appears that the decision was also followed by an order or judgment which contained the following language:
“After hearing all of the evidence produced on the part of the appellants and respondents, and after due deliberation being had thereon, it is hereby ordered, adjudged and decreed that the lands of the petitioners are agricultural lands, and they are swampy, low, or wet lands; and it is necessary, in order to drain such lands, that a ditch or ditches, or other channels for passage of water, should be opened through the lands belonging to the persons other than the petitioners, whose names are set forth in the petitions in this proceeding.”
In section 1 of chapter 888 of the Layrs of 1869, it was provided that:
“Any person or persons owning or possessing any swamp, bog, meadow or other low or wet lands within this state, who shall be desirous to drain the same, and who shall deem it necessary in order thereto that a ditch or ditches or other channels for the *357 free passage of water should he opened through lands belonging to another person or other persons, and any person or persons who shall deem it necessary for the public health that any such swamp, bog, meadow or other low or wet lands shall be drained, may present a petition duly verified * * *.”
In section 2 it was provided that if the county judge is satisfied that such drainage is necessary he shall appoint three commissioners—
“To hear and determine. First. Whether it is necessary, in order to drain such lands, that a ditch or ditches, or other channels for the free passage of water, should be opened through lands belonging to others. Second. Whether it is necessary for the public health that such lands shall be drained; and to take such other and further steps with reference thereto as are hereinafter povided for. ~
Section 4 of that act provides that parties shall be héard, and that the commissioners shall—
“Proceed by personal view of lands and otherwise to determine .whether it is necessary in order to drain such lands, that a ditch or ditches or other channels for the free passage of water shall be opened through lands belonging to others than the petitioner or petitioners, and also whether it is necessary for the public health that such lands shall be drained.”
In section 5 it is provided, viz.:
“Any party feeling aggrieved by such determination may appeal therefrom to the said county judge by giving written notice of such appeal to said commissioners within ten days after the last publication of said notice.”
That section also provides that the judge shall “proceed to hear said appeal, and to determine the same.”
In section 6 it is provided that if the commissioners shall determine, or the county judge shall determine, “that for the benefit of the public health such ditches, drains or channels should be be opened,” it shall be their duty to cause an accurate survey of all the said lands to be made.
Section 12 provides that the county judge shall hear the proofs and allegations of the commissioners, and that he may dissolve the commission, or may give any directions that the rights of parties or the public interest shall require. That section also provides that:
“An appeal on questions of law arising under this act, may be taken from the decision of any county judge, or county judge and justices of sessions, to the supreme court at any time within thirty days after such decision shall have been made and filed; and the same shall be heard as appeals from an order are heard; cost thereon to be adjudged in the discretion of the court.”
In He Swamp Lands in Town of Chili, 5 Hun, 116, it was held, in proceedings arising under the act of 1869, and the amendment thereof by chapter 803 of the Laws of 1871—
“That the reversal by the county judge of the detemination of *358 the commissioners,- upon the ground that it was not necessary for the public health that the lands described in the petition 'of the landowners upon which this proceeding was instituted should be drained, was conclusive upon that question; this court having no power to review the facts, the appeal to it being limited, by the terms of the act (section 12, Act 1869), to questions of law.”
That case was referred to with approval in Re Ryers, 72 N. Y. 1.
Inasmuch.as the county court reached the conclusion that it was not necessary for the public health that the lands described in the petitiomshould be drained, it would have been in accordance with the authority in the Town of Chili Case to have ordered a reversal of the proceedings, and we are of the opinion that the county court ought to have ordered a reversal of the proceedings had, His error in that respect should lead us to everse the order entered-upon his decision.
Since the proceedings were instituted, in 1891, the people of the state have amended the constitution, and the provision to which we shall refer took effect on the 1st day of January, 1895. In article 1, § 7, of the amended constitution is found the following language:
“General laws may be passed permitting the owners or occupants of agricultural lands ■ to construct and maintain for the drainage thereof, necessary drains, ditches and dykes upon the hands of others, under proper restrictions, and with just compensation, but no special laws shall be enacted for such purposes.”
_ _ . . Prior to the adoption of that provision of the constitution,' drainage laws were upheld only for the purpose of preserving the pubEe health. In re Ryers, 72 N. Y. 1, and cases there cited. It is to be observed that the provision of the constitution to which we have referred is permissive to the legislature. The words, “general laws may be passed permitting,” etc., contemplate future action by the legislature. Such action was had by the legislature in 1895 as will be seen by an examination of chapter 384 of the Laws of 1895. In the first section of that act a definition is given of the term “drain” and the term “dyke,” and authority is then given in the following language: £'j
“A person owning agricultural- lands within this state may institute proceedings for the drainage of such lands or the protection thereof from overflow, by the construction and maintainance of a drain or dyke, on the lands of another person, or the use of mechanical devices, by presenting a verified petition to the county court of the county in which lands are located * * * setting forth a general description of the lands to be drained or protected, the names and places of residence of the owners of all lands affected by the proceedings, so far as the same can with* reasonable diligence be ascertained, and a prayer for the appointment of three commissioners.”
In the fifth section of that, act it is provided that on the pre*. *359 sentation of the petition the court shall, if there appears to be reasonable ground thereof, appoint three freeholders—
“To hear, and determine the following matters: “First. Whether such, lands shall be drained or protected. Second. Whether it is necéssary in order to drain or protect such land that a drain bé opened through or dykes erected upon, lands belonging to another or whether mechanical devices should be constructed or used. Third. The amount of damage, if any, sustained by such other land owners, by reason of the opening of such drain or the construction of such dyke. Fourth. Take such other and further steps with reference to the proceeding as are provided by this act.”
Section 8 provides that, after filing of such determination, any person aggrieved may appeal therefrom “to the court in which such proceeding was instituted,” and the court shall “hear and determine such appeal;” and it is further provided, viz.:
“The court shall enter an order in relation to such determination, reversing, affirming or modifying the same, and such order, shall be final and conclusive in relation to all matters involved in the appeal.”
In section 11 a provision is inserted that a person aggrieved by an assessment may appeal to the court in which such proceeding was instituted, or is pending, for the correction thereof; and that section further provides that after hearing the appeal the court “shall enter an order confirming or setting the same aside, from which order there shall be no appeal.”
The provisions we have already referred to are sufficient to indicate that the statute of 1895 differs widly from the act of 1869 and the act of 1871 amending the same. It may be observed, in passing, that the act of 1895 does not, in terms, repeal the statute of 1869, or the statute of 1871.
It is contended by the learned counsel for the respondent that the proceedings before us may be upheld under the new provision ,of the constitution, to which reference has been made, and the statute of 1895, passed in pursuance of the authority conferred by the new constitutional provisions. We are not persuaded that such course ought to have been adopted by the county court. The constitutional provision was prospective. It authorized the legislature, at a subsequent period, to pass a general law permitting the owners of agricultural lands to construct and maintain, for drainage thereof, necessary drains, ditches, and dykes upon the lands of others. Hntil the passage of such law there was no authority for conducting the proceedings in virtue of the constitutional provision. The provision contained in the general law passed in 1895 were so unlike the provisions found in the legislation of 1869 and 1871 that we are of the opinion that the proceedings instituted in 1891 ought not to be upheld under the statute of 1895. We are of the opinion that neither the constitutional provision, nor. the statute of 1895, should have retroactive effect, inasmuch as there is no express language in either the *360 constitution or in the statute evincing the intent that they should be retroactive. All the language of the new constitutional provision, and of the law passed in 1895, can be satisfied by giving a construction which shall regard it as prospective in its operation. Railroad Co. v. Van Horn, 57 N. Y. 473; O’Reilly v. Utah, N. & C. Stage Co., 87 Hun, 406; 68 St. Rep. 432; Shreveport v. Cole, 129 U. S. 43. In the latter case the following; lagúage was used:
“Constitutions, as well as statutes, are construed to operate prospectively only, unless, on the face of the instrument or enactment, the contrary intention is manifest, beyond reasonable question.”
The foregoing views lead us to the conclusion that the county-court fell into an error in upholding the proceedings. We think its order and judgment should be reversed, and the proceedings in stituted in 1891 should be dismissed, with costs.
Judgment and order of the county court of Monroe county reversed, with costs, and the proceedings dismissed, with costs.
All concur.