HERMAN C. CORT, Plaintiff, *v.* CLARENCE A. SMITH, Individually and as County Manager and as Director of Finance of the County of Monroe, N. Y., and Others, Defendants.

Fourth Department, November 6, 1936.

*Samuel Levy*, for the plaintiff.

*Harry Rosenberg, Monroe County Legal Adviser*, for the defendants.

EDGCOMB, J. This controversy comes to us upon an agreed statement of facts. Plaintiff, a taxpayer of the county of Monroe, seeks a declaratory judgment determining that article 2-A of the County Law (Laws of 1935, chap. 948) is unconstitutional, and declaring the rights and other legal relation of the parties.

Article 2-A was added to the County Law in 1935. It permits any county, other than one wholly included within a city, to adopt one of the two forms of government therein specified — Plan " A," known as the County President Form, or Plan " B," known as the County Manager Form.

The people of Monroe county adopted Plan " B " at the general election in November, 1935. On January 2, 1936, the board of supervisors appointed Clarence A. Smith county manager, and also made him director of finance, in conformity with the provisions of section 7-p of the act, since which date he has discharged the duties of both offices.

The process of government has never approached an exact science. It has always been, and probably always will be, more or less empirical. Agitation for a better and more efficient form of county government has taken place over a period of several years. The State Commission for the Revision of Tax Laws gave the matter careful attention, and on February 6, 1935, made an exhaustive report to the Legislature, recommending, among other things, that a law be enacted which would make it possible for a county to choose one of several forms of government, whichever it thought would best suit its needs. Recognizing that restraints against a too drastic or revolutionary change were to be found in the State Constitution, the Commission suggested that, until proper amendments to the fundamental law of the Commonwealth could be adopted, a statute should be passed which would permit counties to more effectively guard against waste and extravagance, and to improve their government, by selecting and taking to themselves one of the forms recommended. (See Legis. Doc. 1935, No. 63.) Hence the legislation here under consideration.

The wisdom of the present law is not for us to determine. Whether it will cure the ills which have existed in the past, and work for a more economical and efficient handling of the county's business, is a subject concerning which there may well be a difference of opinion. Government is instituted to protect the rights of its people, and different forms exist because the ideas of men differ as to the best method of protecting those rights. Efficiency and economy in government are goals to be earnestly sought. The Legislature, the law-making body of the State, has thought highly enough of the plan to make it possible for a county to try the experiment, and the people of Monroe county, a limited locality which knows its problems and needs, have, by a majority vote, signified their desire to put it to a test. That is enough. It is an example of genuine home rule, and home rule is the spirit and genius of American liberty. The court has no right, much less desire, to interfere with the majority decision of the voters of Monroe county, by declaring the act illegal, unless it clearly contravenes some mandate of the fundamental law of the State.

Heretofore the management and control of the various counties of the State, except as to those matters which had been exclusively

turned over to some other official, were vested in their boards of supervisors. That body was given both legislative and administrative duties. The present statute makes it possible for a county to centralize authority and responsibility. The county is given an executive head. The board of supervisors is not done away with. They have not been deprived of their legislative functions. (§ 7-e.) The amendment merely permits the administrative duties of the county, which formerly devolved upon its board of supervisors, to be turned over to a responsible executive. Section 7-g declares that the county manager " shall be the administrative head of the county government," and section 7-l provides that " As the administrative head of the county government " the manager shall have the powers and duties therein set forth. In *Matter of Carey* v. *Smith* (247 App. Div. 473), this court, speaking through its presiding justice, said: " The whole purpose of the county manager plan is to concentrate responsibility for the administration of all departments embraced within the plan in the county manager, and hold him primarily responsible for the government of the county."

Plaintiff's claim to relief is based upon two grounds, which may be briefly summarized as follows: (1) That the statute delegates powers which belong to the board of supervisors, a constitutional body, to the county manager and director of finance, in violation of sections 26 and 27 of article III of the State Constitution, thereby rendering the entire act void and ineffective; (2) that article 2-A was adopted in violation of the provisions of section 1 of article III of the Constitution, which vests the legislative power of the State in the Senate and Assembly.

At the outset it must be borne in mind that the power of the Legislature is unlimited, except as it is restrained by the Constitution (*People ex rel. Central Trust Co.* v. *Prendergast*, 202 N. Y. 188, 197), and that every presumption is in favor of the validity of the statute. Unless a reasonable doubt exists as to its constitutionality, the act must be upheld. (*People ex rel. Cotte* v. *Gilbert*, 226 N. Y. 103, 106; *Ogden* v. *Saunders*, 12 Wheat. 213, 270; *Willis* v. *City of Rochester*, 219 N. Y. 427, 432; *Gardner* v. *Ginther*, 232 App. Div. 296, 298; affd., 257 N. Y. 578; *Whitney* v. *California*, 274 U. S. 357, 371; *Matter of Bareham* v. *Board of Supervisors of County of Monroe*, 247 App. Div. 534, 537; *Dollar Co.* v. *Canadian Car & Foundry Co.*, 220 N. Y. 270, 275.)

There can be no doubt that the board of supervisors is a constitutional body. (*People ex rel. Howard* v. *Supervisors of Erie County*, 42 App. Div. 510; affd., 160 N. Y. 687; *Williams* v. *Boynton*, 71 Hun, 309, 318; affd., 147 N. Y. 426.) The Constitution makes

it such.  Section 26 of article III decrees that there shall be such a board in each county of the State, except where the county is wholly included within a city.

While the existence of such a body is assured, it will be noted that its duties are not prescribed by the Constitution, except that the Legislature is directed to confer upon such boards, by general laws, " such further powers of local legislation and administration as the Legislature may, from time to time, deem expedient." (Art. III, § 27.)  As before indicated, the statute in question does not abolish the office of supervisor, nor does it take from the board any of its legislative functions.  It simply transfers the administrative duties formerly exercised by the board or other officials to the county manager.  The board is still charged with responsible and important duties.  These are set forth in section 7-e and other parts of the act.  Section 7-k gives the county manager the right to attend the sessions of the board, and to present his views on all matters under consideration, but he is given no power of veto over any action which is taken.  His views are advisory only.  The responsibility for what is eventually done rests upon the board, and not upon the county manager.  While section 7-o imposes upon the manager the duty of preparing and submitting the budget, the board of supervisors is required not only to hold a public hearing thereon, but to finally adopt it with such changes and revision as the board deems proper.

True, the statute cannot take from the board of supervisors any duties imposed upon it by the Constitution, and give them over to some other official, but as no duties have been laid upon such board by that document, none have been taken away by the act.

Nor can it be said, as urged by the plaintiff, that the board has certain inherent power which necessarily flows from or is derived from the office itself, which power has been improperly taken from the board, and turned over to the county manager, or some appointee of his.  The board is a body of strictly limited powers; its prerogative is restricted to that which has been expressly given it by statute, or which is necessarily or reasonably implied from the authority expressly conferred.  If power has not been thus granted, it has been reserved by the Legislature to be dealt with by that body as it sees fit, within constitutional limits.  (*Wadsworth* v. *Board of Supervisors*, 217 N. Y. 484, 490, and cases there cited; *People ex rel. Farnsworth* v. *Supervisors*, 65 Hun, 481, 483; *People ex rel. Merritt* v. *Lawrence*, 6 Hill. 244; *Kingsley* v. *Bowman*, 33 App. Div. 1, 6.)

Referring to a board of supervisors, it is said in *People ex rel. Slosson* v. *Board of Supervisors* (116 App. Div. 844, at p. 846): " At

the outset it must be kept in mind that the board derives all of its powers from the Legislature, and that its exercise of authority must be confined to the powers vested in it by law."

It must also be remembered that the board of supervisors is not the county, but a body of town and city officers acting for and on behalf of the county in such matters as have been turned over to them by law. (*Board of Supervisors* v. *Ellis*, 59 N. Y. 620, 624; *People ex rel. Slosson* v. *Board of Supervisors*, 116 App. Div. 844, 846.)

That which the Legislature has given the Legislature can take away. It can deprive the board of its purely statutory duties. (*County of Queens* v. *Petry*, 54 App. Div. 115.) But it cannot go so far as to abolish the office of supervisor by indirection. (*People ex rel. Burby* v. *Howland*, 155 N. Y. 270.) That has not been done by this statute.

Nor can it be said that, because the board possessed certain administrative powers prior to the enactment of the present Constitution, and because that document (Art. III, § 27) makes it the duty of the Legislature to confer upon all boards of supervisors "such further powers of local legislation and administration" as may be deemed expedient, the authority possessed by such boards at the time the Constitution was adopted has become fixed, and cannot be withdrawn. Giving "further" authority does not imply that such legal or rightful power as already existed cannot be recalled. Section 16 of article I of the Constitution declares that such parts of the acts of the Legislature of the State then in force shall be and continue to be the law of the State, *subject to such alterations as the Legislature shall make concerning the same.* (Italics mine.) It was never intended by the adoption of the present Constitution to forever fasten onto the people of this Commonwealth the laws which were in existence at the time of its passage. The use of the expression "further powers of local legislation and administration," as used in section 27, article III, was made necessary by reason of the fact that, if any legislative power was to be conferred upon the various boards of supervisors in the State, some authority therefor must be given, in view of the provision in section 1 of article III, which vests the legislative power of the State in the Senate and Assembly.

Neither can it be successfully claimed that the appointment by the board of supervisors of a county manager, who in turn is to appoint all subordinate officers, is repugnant to the mandate of the Constitution. Section 2 of article X of that document provides that all county officers, whose election or appointment is not otherwise provided for in the Constitution itself, shall be elected by the

electors of the respective counties, or appointed by the boards of supervisors, or other county authorities, as the Legislature shall direct. It was sought by this provision to reserve to the various localities of the State the right to choose their own local officers. Article 2-A of the County Law does not violate that principle. The right of self-government is preserved to the respective counties which choose to come in under the law. The county manager is as much a county " authority " as if he had been elected by the people of Monroe county. The officers and employees designated by him are appointed by a " county authority " within the meaning of the Constitution. (*Scott* v. *Village of Saratoga Springs*, 199 N. Y. 178, 186, 187.)

But the plaintiff insists that article 2-A of the County Law was passed in violation of the provisions of section 1 of article III of the Constitution, which vests the legislative power of the State in the Senate and Assembly.

It is true that the statute, when it was passed by the Legislature and signed by the Governor, was not binding on Monroe county, nor on any county in the State. It was impotent, and destitute of any force or effect, until some county saw fit to adopt, pursuant to its terms, one of the forms of government therein mentioned; then and only then was it of any consequence.

It is very true that the Legislature could not delegate its power to pass a charter governing a city or county to any other body or community. It can, however, draft a charter or optional form of government for municipalities, and make its adoption dependent upon the vote of the locality. (*Matter of Mooney* v. *Cohen*, 272 N. Y. 33; *Cleveland* v. *City of Watertown*, 222 id. 159; *Stanton* v. *Board of Supervisors*, 191 id. 428; *People ex rel. Unger* v. *Kennedy*, 207 id. 533.)

We fail to find any conflict between the amendment to the County Law and the State Constitution. That being so, we cannot condemn as illegal the acts of the board of supervisors and the county manager of Monroe county performed under said amendment.

It follows that the defendants are entitled to a judgment declaring the rights and legal relations of the parties as demanded by them in the agreed statement of facts, together with costs.

All concur. Present — SEARS, P. J., EDGCOMB, THOMPSON, CROSBY and LEWIS, JJ.

Submitted controversy determined in favor of the defendants, with costs.