In the Matter of HENRY R. DUTCHER, JR., et al., Appellants, *v.* A. GOULD HATCH, as Clerk for the County of Monroe, Respondent.

Fourth Department, October 1, 1963.

*Thomas R. McHugh* for appellants.

*Leo T. Minton, Monroe County Legal Adviser (Raymond H. Schwartz* of counsel), for respondent.

*Arthur B. Curran, Jr., Corporation Counsel of City of Rochester, amicus curiæ.*

BASTOW, J. This appeal presents the question as to whether or not a referendum to the voters of Monroe County is required in the approaching general election. pursuant to the provisions of section 2 of article IX of the State Constitution. Chapter 1022 of the Laws of 1963 amended article 9 of the Optional County Government Law by adding thereto a new section (1006-a), commonly known as a " Weighted Vote Law ", which in substance grants to. certain supervisors of a county which has adopted Plan " B " of that law, multiple votes based upon a formula set forth in the enactment.

. Section 2 of article IX of the Constitution, as approved by the People on November 4, 1958, effective January 1, 1959, authorized the Legislature to provide by law alternative forms of government for counties and for the submission of one or more of such forms of government to the electors in such counties. Subdivision (f) grants the right to a stated percentage of electors to petition for a referendum within at least 60 days after final enactment of any law passed by the Legislature pursuant to subdivision (b) of the same section which does not apply alike to all counties in the State and which " abolishes or creates an elective office, *changes the voting or veto power of.* or the method of removing *an elective officer,* changes the term of office or reduces.the salary of an elective officer during his term of office, abolishes, transfers or curtails any power of an elective

officer, or changes the form or composition of the elective governing body of such county ". (Emphasis supplied.)

Respondent County Clerk contends and Special Term in substance has held that the Legislature may enact laws in effect applicable (as we shall subsequently see) only to Monroe County authorizing any of these changes and that the required number of electors are powerless to petition for a referendum to have all the electors in the county pass thereon at a general election. In other words, not only may a local law, such as this one, providing for weighted voting by certain supervisors, be enacted by the Legislature without any right to a referendum but also local laws, among other things, abolishing or creating elective officers, changing terms of office and changing the form or composition of the elective governing body. We are unable to agree with this conclusion.

Our own conclusion is reached by the following reasoning. Historically, one of the early provisions authorizing adoption of an optional form of county government is found in an amendment to then section 26 of article III of the Constitution approved by the People on November 5, 1929, effective January 1, 1930. This empowered the Legislature to provide such alternate form of government for the Counties of Westchester and Nassau. It is significant, however, that the amendment specifically provided that after such adoption no law which, among other things, " changes the voting or veto power of or the method of removing an elective officer * * * shall become effective without adoption and approval by the electors of such county."

In 1934 and 1935 the Senate and Assembly adopted concurrent resolutions again amending section 26 of article III of the Constitution. This amendment was approved by the People at the general election on November 5, 1935, effective January 1, 1936. This provision empowered the Legislature to provide alternative forms of government for all counties outside of New York City. Again it was provided that after the adoption of a form of government by a county " no law, special or local in its terms or in its effect, which * * * changes the voting or veto power of * * * an elective officer * * * shall become effective without adoption by the electors of such county ".

Keeping in mind that this constitutional amendment was approved by the People in November, 1935, we turn to chapter 948 of the Laws of 1935. This legislative enactment, without benefit of constitutional amendment (although the one heretofore described was pending), authorized any county, other than one in New York City, to adopt one of two forms of government therein described as Plans " A " and " B ". This enactment

became effective on May 16, 1935 and the same Fall (November, 1935) the permissive provisions thereof were implemented by the electors of Monroe County, who adopted Plan " B " to take effect on January 1, 1936 — the same date the constitutional amendment to section 26 of article III became effective. The constitutionality of this enactment was upheld in *Cort* v. *Smith* (249 App. Div. 1, affd. 273 N. Y. 481).

Significantly, this statutory enactment of 1935 contained no provision for approval by the electors of the county or a permissive referendum to them upon the passage of any subsequent law by the Legislature dealing with certain subject matters such as abolishment of elective offices, changes in voting power or the method of removing elective officers. Equally significant, however, is the provision in section 7-c of this enactment that " [o]ther provisions of law relating to counties and their government * * * if not inconsistent shall apply to such counties " which had adopted a plan under the enactment.

It is the position of respondent, and so Special Term held, that the provisions of section 26 of article III of the Constitution as approved by the People, effective January 1, 1936, and the present provisions of section 2 of article IX of the Constitution are in no way applicable to Monroe County because the latter adopted a form of government pursuant to the authority of chapter 948 of the Laws of 1935 which contained no provision for a referendum in the many areas, including changing the voting power of supervisors, which the People in every constitutional amendment since 1929 have consistently stated may not be changed without approval by the county electors or reserving to them the right to petition for a referendum.

In our opinion such a conclusion takes a much too narrow view of the applicable provisions of the Constitution and statutes. To hold that the referendum provisions set forth in the Constitution since 1936 are here applicable in no way conflicts with chapter 948 of the Laws of 1935. The fact that Monroe County adopted one of the plans authorized by that law did not foreclose the People speaking through their Constitution from placing restrictions on drastic changes by the Legislature in certain governmental areas without the right of a stated percentage of electors to petition for a referendum. (Cf. *People ex rel. Williams Eng & Contr. Co.* v. *Metz*, 193 N. Y. 148, 157.) " It may be assumed as an undoubted proposition that a new Constitution of a state, as the supreme law, supersedes all laws existing when the Constitution takes effect, in conflict with its provisions, if it appears from a just construction of the instrument that it was intended to have a present binding and operative

force upon the matter or thing upon which the conflict arises."
(*People ex rel. Inebriates' Home* v. *Comptroller,* 152 N. Y. 399,
404.)

It is true that each of the constitutional provisions, including
subdivision (f) of section 2 of article IX of the present Consti-
tution, prefaces the prohibition against legislative changes in
certain matters without the right to a referendum by the words
" After the adoption of an alternative form of government by
a county pursuant to this section." But we view as unsound the
contention that this deprives the electors of Monroe County from
seeking a referendum because that county never adopted a plan
pursuant to any constitutional provision but instead under the
1935 enactment. It is conceded that Monroe County is the only
county that took advantage of the 1935 law. The contention of
respondent boils down to the ultimate fact that Monroe is the
only county in the State adopting an alternative form of govern-
ment that may seek and obtain from the Legislature what
amounts to a local law authorizing, without the right to referen-
dum, not only " weighted voting " but abolishing or creating
elective offices, changing terms of office and the form or com-
position of the elective governing body. (Cf. *Farrington* v.
*Pinckney,* 1 N Y 2d 74, 79; *Matter of Mayor of New York* [*Elm
St.*], 246 N. Y. 72, 77; *Matter of Henneberger,* 155 N. Y. 420, 426.)

We find in the 1935 enactment evidence of a contrary legis-
lative intent. Section 7-c thereof, as heretofore stated, provides
in part that " Other provisions of law relating to counties and
their government which are inconsistent with the provisions of
this article shall be inapplicable to counties to which this article
applies *but if not inconsistent shall apply to such counties.*"
(Emphasis supplied.) The referendum provision in the Consti-
tution is in no manner inconsistent with any part of the 1935
enactment and should be given life and vitality upon the facts
here presented. This view is fortified by the Memorandum
of then Governor Lehman in approving chapter 948 of the Laws
of 1935. The Governor wrote in part as follows: " Fortunately,
the provisions of this bill are so drafted that they will fit in well
with the county home rule amendment to the State Constitution
which will be submitted for the approval of the people at the
general election this Fall." (Public Papers of Governor
Lehman, 1935, p. 358.)

Since 1935 (and since 1929 as to Westchester and Nassau
Counties) there has been a clear constitutional limitation on the
power of the Legislature to adopt this type of legislation without
the benefit of a permissive referendum. Except for a narrow
legalistic argument respondent advances no persuasive reason

to justify his ultimate contention that one county in the State may obtain from the Legislature what amounts to a local law in any one of several vital areas of government and the electors of the county are powerless to seek a referendum thereon. We cannot conclude that by the happenstance of dates on a calendar this one county has obtained a vested right to sit on an island immune from constitutional and statutory permissive referendum provisions.

The order should be reversed and the application granted.

GOLDMAN and HENRY, JJ. (dissenting). We are constrained to dissent because we believe to do otherwise would, in our view, be tantamount to performing a legislative function rather than a judicial determination of existing law. "While the courts may interpret doubtful or obscure phrases and imperfect language in a statute so as to give effect to the presumed intention of the legislature, and to carry out what appears to be the general policy of the law, they cannot, by construction, cure a *casus omissus*, however just and desirable it may be, to supply the omitted provisions." (*McKuskie* v. *Hendrickson,* 128 N. Y. 555, 558; *Meltzer* v. *Koenigsberg,* 302 N. Y. 523, 525.)

The legislation in question (L. 1963, ch. 1022) purports to amend article 9 of the Optional County Government Law. That article is a continuation of article 2-A of the County Law of 1909 (L. 1950, ch. 692). It was added thereto by chapter 948 of the Laws of 1935, on May 16, 1935. The Legislature was then free from any constitutional restraint in enacting laws respecting county government, except that the Constitution then required that there be a board of supervisors in each county outside of New York City. "At the outset it must be borne in mind that the power of the Legislature is unlimited, except as it is restrained by the Constitution". (*Cort* v. *Smith,* 249 App. Div. 1, 4, affd. 273 N. Y. 481.)

The County Manager form of government in Monroe County came into existence, pursuant to a request therefor contained in a message to the Legislature from the Board of Supervisors, by the signature of Governor Lehman on May 16, 1935. It was approved by the electors on November 5, 1935, and became effective in Monroe County on January 1, 1936. When the voters of Monroe County adopted such plan they did so by a majority of the votes cast in the county as provided in section 7-b of the law, without any notice that future constitutional amendments might be applied retroactively so as to require approval of laws thereafter enacted by a split referendum of the voters of the city, the voters of the towns, and the voters of the entire county.

The amendment to section 26 of article III of the Constitution which became effective January 1, 1936 provided in its subdivision 2 that the Legislature should provide by law alternative forms of government for counties and that counties might adopt such a form by a split referendum, and further provided that after adoption of a form of government pursuant to subdivision 2, no law which changed the voting power should become effective without adoption by the electors.

The issue before us can be simply resolved by the answer to the question — is Monroe County operating under an alternative form of government pursuant to and within the meaning of amended section 26 of article III of the Constitution? If it is not then the petitioners are not entitled to a referendum. The section of the Constitution here construed specifically requires that in order to adopt an alternative form of government it must be by the express consent of the electors by a split or triform referendum. It is conceded that this procedure Monroe County was never required to follow. It adopted a form of government by a simple majority vote and by no interpretation or construction of the Constitution can this be held to be an alternative form.

The amendment expressly provided that nothing therein contained should be deemed to impair or restrict the existing power of the Legislature to enact laws relating to the government of a county, until the adoption of a form of government by such county, pursuant to subdivision 2 thereof. It seems clear to us that a form of government adopted before the amendment took effect, pursuant to a law theretofore enacted, cannot by any process of reasoning be held to have been adopted pursuant to the amendment. It follows that the provisions of subdivision 4 of the amendment which apply only after the adoption of a form of government by a county pursuant to subdivision 2 of the amendment do not apply to Monroe County which theretofore adopted a County Manager form of government. In our view the amendment should be interpreted according to its plain unamibiguous language which clearly, simply and unequivocally states that it applies only to counties which have adopted a form of government pursuant to subdivision 2. We do not think that this plain language may be changed because Monroe County happens to be the only county which adopted a form of government pursuant to article 2-A of the County Law or because 6 counties have adopted forms of government pursuant to other provisions of law or because 50 counties have adopted no alternative form of goverment, and that as to them the power of the Legislature is unlimited because it is unrestrained by the Con-

stitution. It should be noted that if the 1936 amendment to section 26 of article III of the Constitution does not apply to Monroe County, as we believe it clearly does not, the provisions of section 2 of article IX thereof which contain the same provisions as such amendment and apply only " [a]fter the adoption of an alternative form of government by a county pursuant to this section " do not apply. The provision of section 7-c of article 2-A of the County Law, which provided that provisions of law not inconsistent with article 2-A should apply to counties adopting an optional form of government thereunder, does not render the amendment applicable to such counties. The amendment is inconsistent with article 2-A. By its terms, it applies only to counties adopting a form of government pursuant to its provisions and the form of referendum for which it provides is entirely inconsistent with the referendum required by article 2-A. Section 7-c is part of a legislative act. The Legislature retained power to repeal or modify it. It was not a restraint upon the Legislature. " That which the Legislature has given the Legislature can take away ". (*Cort* v. *Smith,* 249 App. Div. 1, 6, *supra.*)

Neither by express language nor implication can we find any intent expressed in the amendment that it should be given retroactive effect. It expressly provides otherwise. All of its language can be satisfied by confining its operation to the future and its requirements for a referendum are inapplicable to a county which adopted a form of government before the amendment became effective. Under such circumstances, it must be construed to operate prospectively only. (McKinney's Cons. Laws of N. Y., Book 2, Part 1, Constitution [1954 ed.], Constitutional Interpretation, § 3, pp. 6, 7; *Shreveport* v. *Cole,* 129 U. S. 36, 43; *Matter of Town of Penfield,* 3 App. Div. 30, 37, affd. 155 N. Y. 703.) The rule of construction applicable here was succinctly stated by the Court of Appeals in *Matter of Ayman* v. *Teachers' Retirement Bd.* (9 N Y 2d 119, 125). " This view is in accord with the general rule of construction that statutes as well as constitutional provisions are to be construed as prospective only, unless a clear expression of intent to the contrary is found [citing cases] ".

The majority opinion likens the government of Monroe County to an island. True, its form is different from that of other counties. The fact that it is atypical strengthens respondent's argument that it is not subject to the mandate of the amendment to section 26 of article III of the Constitution. If Monroe County is an island of itself it is because legislative fiat has made it such. If it is to be annexed to the mainland the only

method by which this can be accomplished is by action of the Legislature and not by court decision, no matter how desirable it may seem in principle. The Court of Appeals made this crystal clear in its unanimous decision in *Bright Homes* v. *Wright* (8 N Y 2d 157, 162) where the court said: " Courts are not supposed to legislate under the guise of interpretation, and in the long run it is better to adhere closely to this principle and leave it to the Legislature to correct evils if any exist. If harm has been done by the resolution in question there is nothing about it that cannot be corrected by the Legislature."

In our view Special Term has correctly determined that petitioners are not, under existing law, entitled to a referendum, and we vote to.affirm that determination.

WILLIAMS, P. J., and NOONAN, J., concur with BASTOW, J.; GOLDMAN and HENRY, JJ., dissent and vote to affirm in separate opinion.

Order reversed on the law and application granted, without costs of this appeal to any party.