■ In the Matter of URBAN LEAGUE OF ROCHESTER, NEW YORK, INC., Appellant, v COUNTY OF MONROE et al., Respondents.—Judgment affirmed, without costs. Memorandum: In this CPLR article 78 proceeding petitioner seeks an order compelling respondents to change the number of members of the Monroe County Civil Service Commission from five to three and directing the appointment of a new commission. Petitioner contends that the repeal of the Optional County Government Law in 1974 operated to repeal section 1200 of the Monroe County Charter (Local Laws, 1965, No. 2 of County of Monroe, § 1200), enacted thereunder and to nullify actions taken thereunder. Thus, they argue, the five-member commission established by section 1200 and the appointments to the commission by the county manager are illegal and in violation of section 15 (subd 1, par [a]) of the Civil Service Law. We disagree. We find no repeal, express or implied, of section 1200 by the statute repealing the Optional County Government Law (L 1974, ch 28, § 1). There is no language of express repeal, and, absent such language, a statute is not deemed to repeal an earlier act unless the two are in such conflict that both cannot be given effect (McKinney's Cons Laws of NY, Book I, Statutes, p 554). Section 1200 of the Monroe County Charter contemplates the possibility of the repeal of the Optional County Government Law and contains provisions for dealing with such an event. Clearly, both the repealing statute and section 1200 may be given effect without conflict and there is no repeal of section 1200 by implication. Nor does the repeal of the Optional County Government Law operate to abrogate the actions of the city and county in establishing a five-member commission or in appointing the members thereof. Section 93 of the General Construction Law provides that "The repeal of a statute * * * shall not affect or impair any act done * * * prior to the time such repeal takes effect, but the same

may be * * * enforced * * * as fully and to the same extent as if such repeal had not been effected." Section 93 operated to preserve the commission upon the repeal of the statute under which it had been created. (See *McCrea v. Village of Champlain,* 35 App Div 89; 56 NY Jur, Statutes, §§ 97-100.) Moreover, section 1200 of the Monroe County Charter (Local Laws, 1965, No. 2 of County of Monroe, § 1200 as amd by Local Laws, 1970, No. 9 of County of Monroe) provides that in the event the Optional County Government Law is repealed, "administration of the civil service law for Monroe county and civil divisions therein including the city of Rochester shall not be affected except that the county legislature is hereby empowered to terminate the terms of office of the five-member civil service commission and to appoint a three-member commission, in accordance with the civil service law of the state of New York." Inasmuch as the Legislature has not acted the five-member commission is still in effect. All concur, except Doerr, J., who dissents and votes to reverse the judgment in the following memorandum:

Doerr, J. (dissenting). I disagree. Section 15 (subd 1, par [a]) of the Civil Service Law in pertinent part provides: "A municipal civil service commission shall consist of three persons, not more than two of whom shall at any time be adherents of the same political party. The members of a county civil service commission shall be appointed by the board of supervisors, except that in a county having a county executive the members of the commission shall be appointed by the county executive with the advice and consent of the board of supervisors." Monroe County presently has a five-member civil service commission, all having been appointed directly by the county manager for staggered terms. In order to arrive at a determination of the issue presented in a coherent manner, a review of the Monroe County government is required. The Laws of 1935 (ch 948, § 1) authorized any county in the State of New York outside of New York City to adopt one of two forms of government therein described as Plans "A" and "B". The only county to take advantage of such statutory enactment was Monroe where the electors adopted Plan "B" effective January 1, 1936 under which the executive-administrative powers were transferred from the board of supervisors to a county manager appointed by that body. (For a brief history of the development of the optional form of Monroe County government, see *Matter of Dutcher v Hatch,* 19 AD2d 341.) In any event the county manager form of government, as codified in article 2-a of the County Law of 1909, eventually became the Optional County Government Law, section 1006 by L 1950. The Laws of 1950 (ch 692, § 1) and section 1008 thereof provided that nothing therein contained should be construed to repeal or in any manner affect the provisions of the Civil Service Law (L 1950, ch 692, § 1, eff Jan. 1, 1951). Since no other county had taken advantage of the Optional County Government Law, it was repealed effective May 15, 1954 except insofar as it applied to Monroe County (L 1952, ch 834; Alternative County Government Law, § 701, subd 2). Thereafter the City of Rochester and County of Monroe agreed to consolidate their civil service commissions and to accomplish this result Optional County Government Law, section 1008 was repealed and amended permitting a city, wholly within a county operating under the county manager form of government, to withdraw from its civil service administration and come under that of the county. Again, only Monroe County came under the aegis of this amendment. The statute also provided that if such election were made the county civil service commission membership would be increased from three to five members, all of whom to be appointed by the county manager (L 1961, ch 565, § 1, eff April 12, 1961).

That merger became a reality. (See *Matter of Caparco v Kaplan,* 20 AD2d 212.) If the Monroe County Civil Service Commission is extant pursuant to section 1008 of the Optional County Government Law or some other statutory enactment, the decision below must be affirmed. No enabling statue exists. After passage of the Municipal Home Rule Law (L 1963, ch 843, amd by L 1964, ch 78), the Monroe County Board of Supervisors in 1965 adopted a county charter readopting the county manager form of government which had been followed previously under the Optional County Government Law *(Morin v Foster,* 45 NY2d 287). Chronologically such charter adoption was some five years prior to the formal consolidation of the City of Rochester and Monroe County Civil Service Commissions. To effectuate such commission merger, section 1200 of the Monroe County Charter was amended to provide: "The Monroe county civil service commission is continued for the purpose of administering civil service law for Monroe county and civil divisions therein including the city of Rochester. The five-member civil service commission as established under the Optional County Government Law shall continue *until such law is repealed,* in which event administration of the civil service law for Monroe county and civil divisions therein including the city of Rochester shall not be affected except that the county legislature is hereby empowered to terminate the terms of office of the five-member civil service commission and to appoint a three-member commission, in accordance with the Civil Service Law of the State of New York. Except as otherwise provided in chapter eight hundred sixty-three of the laws of nineteen hundred seventy of the state of New York, nothing in this charter shall be construed to repeal or in any way affect the provisions of the Civil Service Law of the state of New York. [As last amended by Local Law, 1970, No. 9 of County of Monroe]" (emphasis supplied). In 1974 the Legislature did in fact repeal the Optional County Government Law in its entirety (L 1974, ch 28, § 1). The legislative memorandum (McKinney's Session Laws of NY, 1974, p 1917) accompanying such repeal and in support thereof stated: "The Optional County Government Law was repealed on May 15, 1954, except with respect to Monroe County or any other county in which its provisions were applicable at the time of repeal (see Alternative County Government Law, § 702 which was added by L 1952, ch 834, eff May 15, 1954). The law was to continue to be applicable in those counties until repealed, superseded, amended or modified by or pursuant to general, special or local law (Alternative County Government Law, § 701 (2)). At the time of its repeal, the Optional County Government Law, in fact, was *only* applicable in Monroe County. In 1965, Monroe County enacted a new county charter pursuant to the authority granted in the Municipal Home Rule Law (see 1965 Local Law #2, Monroe County). Thus, the Optional County Government Law is no longer applicable to any county in this State, serves no useful purpose and should be repealed." Such repeal was clear and without equivocation and such action by the Legislature, without reservation or saving clause, removed the foundation and underpinning of the Monroe County Civil Service Commission as then constituted. Originally counties evolved as creatures of the State created to perform State functions at the local level. However, an increased demand for autonomy, coupled with the need to solve local problems at the local level, led to certain delegations of powers to counties by the New York Constitution, Municipal Home Rule Law and County Law, relating to its property, affairs or government, or otherwise, if not restricted by the Legislature, as long as any local law adopted or amended is not inconsistent with the Constitution or any general law (Municipal Home Rule Law, § 10, subd 1; *Koenig v Morin,*

56 AD2d 254, revd as moot 43 NY2d 737). (See, also, *Nydick v Suffolk County Legislature,* 36 NY2d 951; *Matter of Resnick v County of Ulster,* 44 NY2d 279.) Counties are specifically restricted relative to the adoption of a local law superseding a State statute, if such local law "changes a provision of law relating to the membership of its civil service commission or to the terms of office of the members of such commission or of the personnel officer administering the provisions of the civil service law." (Municipal Home Rule Law, § 11, subd 1, par i.) Section 1200 of the Monroe County Charter affects the provisions of the Civil Service Law of the State of New York. Since counties are circumscribed in the adoption of local laws concerning the membership and structuring of civil service commissions and the legislative authorization for the present Monroe County Civil Service Commission has been repealed, the only remaining basis for the establishment of the Monroe County Civil Service Commission resides in general law (i. e., Civil Service Law, § 15, subd 1, par [a]). The court below held and the majority apparently agree, that the State Legislature in repealing the Optional County Government Law never intended to dismantle the Monroe County Civil Service Commission and that continuity requires a contrary conclusion. While such argument is appealing, it is not persuasive. "In construing a statute the legislative intention must be sought in the language used therein contained with such helps as the canons of interpretation allow. But new langauge, or, as in this case, an entirely new provision, cannot be imported into a statute giving it a meaning not otherwise found therein. While the courts may interpret doubtful or obscure phrases and imperfect language in a statute so as to give effect to the presumed intention of the legislature, and to carry out what appears to be the general policy of the law, they cannot, by construction, cure a *casus omissus,* however just and desirable it may be, to supply the omitted provision." (*McKuskie v Hendrickson,* 128 NY 555, 558.) If the State Legislature had intended to exempt the Monroe County Civil Service Commission from repeal of the Optional County Government Law, it could very easily have done so. The brief memorandum in support of the repeal contained no provision authorizing the continuation of a commission which had its genesis in a now repealed statute (L 1974, ch 28, § 1). "'It is not allowable to interpret what has no need of interpretation, and when the words have a definite and precise meaning, to go elsewhere in search of conjecture in order to restrict or extend the meaning. * * * Courts cannot correct supposed errors, omissions or defects in legislation * * *. The office of interpretation is to bring sense out of the words used, and not bring a sense into them.' (*McCluskey v. Cromwell,* 11 N. Y. 593, 601-602; see, also, *Matter of Rathscheck,* 300 N. Y. 346, 350.)" (*Meltzer v Koenigsberg,* 302 NY 523, 525.) I view section 93 of the General Construction Law, as protecting from attack acts done under a statute prior to its repeal or emasculation, not as authorizing the continuation of acts which have no basis in law as a result of repeal of a statute. (Appeal from judgment of Monroe Supreme Court—art 78.) Present—Cardamone, J. P., Hancock, Jr., Schnepp, Doerr and Witmer, JJ.